**STATE of Missouri, Plaintiff–
Respondent,**

v.

**Dennis FARR, Defendant–Appellant.**

No. 22158.

Missouri Court of Appeals,
Southern District,
Division Two.

Sept. 4, 1998.

Amy M. Bartholow, Asst. Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Breck K. Burgess, Asst. Atty. Gen., Jefferson City, for respondent.

SHRUM, Presiding Judge.

In a court-tried case, Dennis Farr (Defendant) was convicted of attempted distribution of a controlled substance (methamphetamine), a class B felony, in violation of § 195.211.[1] He was sentenced to six years in the custody of the Missouri Department of Corrections. The single issue on appeal is whether the record contains sufficient evidence to support Defendant's conviction for the offense charged. Defendant argues that the State had to prove that he had the "present ability" to distribute methamphetamine at the time of his arrest. Defendant asserts that the State's evidence fails in that regard because the substance he made and sold was not methamphetamine. This court agrees. We reverse the trial court's judgment and order the defendant discharged.

FACTS

On October 9, 1997, Michael Murphy, a policeman working with a regional drug task force, went to Defendant's house in Sparta, Missouri, to buy methamphetamine. Upon entering the house, Murphy saw that Defendant was "in the process of making methamphetamine." He estimated that when he arrived Defendant was more "in a later stage of cooking meth," rather than "the beginning point." The following paragraphs summarize Murphy's testimony concerning this incident.

Defendant was using the "Nazi-dope method" to manufacture methamphetamine. To make methamphetamine by this method, the essential ingredients and equipment include "cold pills" or over-the-counter medications containing ephedrine, lithium, filters, ether, hydrochloric acid gas (produced from rock salt and a drain cleaner such as Liquid Fire), anhydrous ammonia, jars, bottles, funnel, and tubing. While at Defendant's house, Murphy saw all items necessary to make methamphetamine by this process except anhydrous ammonia. Also, Murphy saw Defendant use many of the items during the cooking process. Murphy's testimony concerning anhydrous ammonia included the following:

"Q. Is anhydrous ammonia a step in the cooking process?

"A. Yes, it is.

"Q. Did you ever see [Defendant] with anhydrous ammonia?

---

1. All statutory references are to RSMo 1994 unless otherwise noted.

"A. I did not see him with it, but he told us that he had some.

"Q. And, in the process of cooking that you observed [Defendant] do, would the anhydrous ammonia have been used in the process that you were able to observe?

"A. No."

About fifteen minutes after Murphy arrived at Defendant's house, Defendant gave him a sample of "something that [Defendant] ... previously ... had prepared." Murphy took the sample to his car where he "did a field test." The test revealed that the substance was methamphetamine.

When Murphy re-entered the house, Defendant was still "cooking or trying to create more methamphetamine that we'd use or buy." Ultimately, Defendant "got a finished product," and Murphy bought seven-tenths of a gram thereof for $59. When Murphy obtained this product, he believed it was methamphetamine. However, authorities later learned that the substance Murphy bought was pseudoephedrine, not methamphetamine.

When arrested, Defendant told law officers he had cooked methamphetamine at least three times in the past year and was "trying to" cook methamphetamine on the evening of October 9, 1997. Defendant also told them he had sold methamphetamine to his cousin that same evening. During questioning, Defendant described to Officer Massengale how he cooked methamphetamine. When Massengale was asked if everything Defendant told him was consistent with his knowledge of "how to do the Nazi-dope method," he answered, "Yes." During a thorough search of Defendant's house the next day, police officers found everything required to manufacture methamphetamine by the "Nazi-dope" method except anhydrous ammonia.

The State charged Defendant with attempt to manufacture methamphetamine, § 195.211 (Count II), possession of ephedrine, § 195.246 (Count III), and the class B felony offense of attempted distribution of methamphetamine, § 195.211 (fourth amended Count I). Defendant pled guilty to Counts II and III and was sentenced to concurrent terms in the Department of Corrections. However, he pled not guilty to Count I. At trial, Defendant testified that he knew what he sold to Murphy was not methamphetamine because he did not have anhydrous ammonia to use in the product he cooked on October 10, 1997.

The trial court found Defendant guilty of the Count I charge and sentenced him to a term of six years, to run concurrently with his other convictions. This appeal followed.

## DISCUSSION AND DECISION

Defendant's single point relied on maintains that under the § 195.211 class B felony charge of attempted distribution of methamphetamine, the State had to prove (1) that he had the "present ability" to consummate the offense of distribution of methamphetamine and (2) that he "knew ... what he was selling was methamphetamine or that the substance he sold was methamphetamine." Defendant asserts that the State's evidence

"fails regarding these issues because the evidence was clear that the substance did not test positive for methamphetamine, and [Defendant] knew ... it was not methamphetamine when he sold it, because he did not have the necessary ingredient of anhydrous ammonia present at his house to enable him to make methamphetamine."

Defendant's point relied on and argument in support thereof rely heavily on this court's opinion in *State v. Reyes*, 862 S.W.2d 377 (Mo.App.1993). There, the accused was charged with producing marijuana in violation of § 195.211.1, RSMo Cum.Supp.1991, but convicted of "attempt" to produce marijuana, a class B felony under § 195.211. Apparently, the jury was instructed on the attempt offense because of the questionable quantity of marijuana. Specifically, § 195.211.2 provided that a person who produced or attempted to produce less than five grams of marijuana was not guilty of an offense. The evidence was that the accused had 44 plants, nine of which were approximately six inches tall. The remainder were "very small" seedlings that had just sprouted. A chemist confirmed that the nine plants were marijuana but the seedlings had died and he could not conclusively identify those seedlings. The trial court gave an instruction that told the jury they could find the

defendant guilty of a class B attempt to produce marijuana if her conduct in growing approximately 44 marijuana plants "was a substantial step toward the commission of the offense of producing marijuana." *Id.* at 380, n. 3. On appeal, this court reached the following conclusions and decisions.

The term "attempt" has both a common law meaning and a statutory meaning. *Id.* at 383. When the legislature created the separate inchoate offense of "attempt to commit an offense," § 564 .011.1, it made a broader offense than common law attempt with a lesser punishment than the common law offense of attempt to manufacture under § 195.211. *Id.* at 386. An attempt charged under § 564.011.1 is a class C offense and only requires proof of a "substantial step" toward consummation of the substantive offense, whereas the common law meaning of attempt requires the conduct of an accused to "nearly approach the consummation of that offense." *Id.* at 382[1]. "[A]s used in § 195.211 RSMo Cum.Supp.1991 the term 'attempt' bears the common law meaning." *Id.* at 386. Consequently, for the State to convict an accused of an attempt under § 195.211 (class B felony), it must adduce evidence that meets common law standards. Applying these principles, this court concluded:

"As noted, the common law attempt to produce more than 5 grams of marijuana must approach the commission of the production of more than 5 grams of marijuana. Defendant, at the time of her arrest, did not have the *present ability to consummate the offense.* That being so, the evidence is not sufficient to support the principal offense of an attempt to produce more than 5 grams of marijuana, as proscribed by the second clause of § 195.211 RSMo Cum.Supp.1991."

*Id.* at 387 (emphasis supplied).

▆▆▆▆ In urging reversal, Defendant points repeatedly to the "present ability" language in *Reyes,* arguing that since the "substance sold to Officer Murphy was not methamphetamine, the evidence fell short because [Defendant] did not have the 'present ability' to consummate the offense of distribution of methamphetamine, a necessary element for an attempt charged under § 195.211." We agree. Although not expressly stated in the opinion, *Reyes* essentially recognized the defense of "legal impossibility" as yet viable in Missouri for persons charged with class B attempts under § 195.211. The impossibility defense stems from the common law view that it is not a "crime to attempt to do that which is legally impossible to do." *See State v. Guffey,* 262 S.W.2d 152, 156 (Mo.App. 1953).[2]

For whatever reasons, Defendant apparently failed to produce methamphetamine on the evening of October 9, 1997, despite his efforts to do so; consequently, he did not have the present ability to consummate the offense of distributing methamphetamine. *See Reyes,* 862 S.W.2d at 387. Accordingly, the evidence is not sufficient to support a finding that Defendant committed the common law offense of attempting to distribute methamphetamine as proscribed by § 195.211.1.

Here, the State accepted the greater burden of the common law meaning of attempt (nearly approaching the consummation of the offense) in return for the increased punishment provided under § 195 .211 (class B punishment), rather than opting for the lesser burden of proving an attempt under § 564.011 (substantial step) with the less severe punishment provisions of that section (class C punishment). *See* MAI–CR3d 304.06 (Notes on Use 2). Having opted to charge Defendant with the more severe offense, the State is held to proof of that act. *See State v. Edsall,* 781 S.W.2d 561, 564[1]

---

**2.** When the legislature created the inchoate offense of an attempt to commit a crime upon proof that the accused took a "substantial step" toward commission of the offense, § 564.011, it eliminated the "impossibility" defense. *See State v. Hunt,* 651 S.W.2d 587, 589[1] (Mo.App.1983). Specifically, § 564.011.2 provides: "It is no defense to a *prosecution under this section* that the offense attempted was, under the actual attendant circumstances, factually or legally impossible of commission, if such offense could have been committed had the attendant circumstances been as the actor believed them to be." (emphasis supplied). We discern no legislative intent in § 564.011.2 to eliminate impossibility as a defense to common law attempts.

(Mo.App.1989). We hold that the evidence was insufficient to support a finding that Defendant had the "present ability" to consummate the sale of methamphetamine when arrested. Defendant's point has merit.[3]

The judgment is reversed and Defendant is ordered discharged.

MONTGOMERY and BARNEY, JJ., concur.

---

**3.** As briefed and presented, we need not decide whether a § 564.011 attempt to distribute a controlled substance is a lesser included offense of a common law attempt to distribute under § 195.211. Our disposition, i.e., reversal without remand, should not be interpreted as indicating a view, one way or the other, regarding this issue.