STATE of Missouri, Respondent,

v.

Michael R. WITHROW, Appellant.

No. SC 81820.

Supreme Court of Missouri,
En Banc.

Dec. 7, 1999.

Daniel L. Viets, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., John M. Morris, Breck K. Burgess, Asst. Attys. Gen., Jefferson City, for respondent.

JOHN C. HOLSTEIN, Judge.

A Monroe County jury convicted Michael Withrow of attempting to manufacture methamphetamine in violation of sec. 195.211, RSMo (1994).[1] Withrow was found to be a prior and persistent offender. He was sentenced to eighteen years imprisonment. Pursuant to an order of a dissenting judge of the Missouri Court of Appeals, Eastern District, the case was transferred here. *Rule 83.01.* Defendant raises seven points on appeal. The first asserts that evidence was insufficient to establish a finding that defendant constructively possessed any materials used to manufacture methamphetamine. Because such possession is essential to his conviction, he asserts a motion for judgment of

---

1. All statutory cites are to RSMo (1994).

acquittal should have been sustained. The first issue is dispositive, and only it is addressed. Defendant's conviction is reversed.

### I.

This Court reviews the facts in the light most favorable to the verdict. *State v. Clark*, 981 S.W.2d 143, 145 (Mo. banc 1998). In doing so, it affords the state the benefit of all favorable inferences drawn from the evidence and disregards all evidence and inferences to the contrary. *State v. Simmons*, 955 S.W.2d 752, 764 (Mo. banc 1997).

On two evenings in January 1997, officers of the Northeast Missouri Narcotics Task Force engaged in the surveillance of a suspected "drug house" in Hannibal, Missouri. Over these two evenings, the officers witnessed approximately thirty people coming and going from the house. On average, each person stayed for only three to five minutes. Officers also observed the porch light being turned on and off, apparently indicating the drug house was either open or closed for business. Over this period, Withrow was seen coming and going from the house on about five or six occasions. An officer recalled seeing Withrow's car parked in front of the house at least two times over the two-day period.

Officers then obtained a search warrant for the house and proceeded to execute it on January 25. They knocked on the front door and announced their presence. From inside, they could hear movement, yet no one answered the door. The officers were forced to breach the door. While climbing the stairs, the officers saw defendant leave the east bedroom and approach the top of the staircase with his hands raised. That bedroom emitted a solvent-like odor, commonly associated with the production of methamphetamine.

Upon further investigation, officers discovered a locked closet in the east bedroom containing a sealed glass jar with a milky liquid and heavy white sediment along the bottom. The jar's contents were indicative of the primary stage of methamphetamine production. In addition to the jar, police found bottles of pseudoephedrine pills, lithium batteries, grain alcohol, and distilled water, all ingredients used to manufacture methamphetamine. Police seized the pills and batteries from the locked bedroom closet. The grain alcohol and distilled water were located somewhere in the bedroom. However, officers were uncertain as to the exact location of the distilled water, and the record fails to indicate whether officers found the grain alcohol in the closet or elsewhere in the bedroom. Also discovered in the room was a propane tank with an adapter used to store a further methamphetamine ingredient, anhydrous ammonia. Coffee filters, glass cookware, a hotplate, and a plastic jug with plastic tubing, also used in the production of the drug, were present either in the closet or the east bedroom. Firearms and ammunition were present in the room. Across the hall, in the west bedroom, officers seized weighing scales, seven syringes (one of which contained a clear liquid), a spoon, and a marijuana pipe. Police also recovered a recipe for making methamphetamine in the house. Lastly, police obtained a September 1996 letter from the west bedroom addressed to defendant at a residence at which he had not lived since 1993.

### II.

As previously noted, defendant's first point challenges the sufficiency of the evidence. Because this point was first raised by the court of appeals in its opinion, review is for plain error. *Rule 30.20*. If the evidence is insufficient to sustain a conviction, plain error affecting substantial rights is involved from which manifest injustice must have resulted. *State v. McClunie*, 438 S.W.2d 267, 268 (Mo.1969). Defendant claims the evidence was insufficient to demonstrate an attempt to manufacture drugs warranting submission to the jury. He was charged and convicted

under sec. 195.211 for attempted manufacture of methamphetamine.

### A.

To determine whether evidence is sufficient to convict a person of attempt to manufacture methamphetamine under sec. 195.211, it is first essential to define what constitutes an "attempt" as it is used in that section. The general statute regarding the inchoate offense of attempt to commit an offense is found in sec. 564.011. It provides:

> A person is guilty of attempt to commit an offense when, with the purpose of committing the offense, he does any act which is a substantial step towards commission of the offense. A **"substantial step"** is conduct which is strongly corroborative of the firmness of the actor's purpose to complete the commission of the offense.

It goes on to indicate that "unless otherwise provided," the punishment for attempt will be classified generally one step below the class of the completed offense.[2] *Id.*

In *State v. Reyes,* 862 S.W.2d 377, 384 (Mo.App.1993), the court of appeals noted that sec. 564.011 does not purport to define an element of any specific offense but rather creates a separate offense of an "attempt to commit an offense." *Id.* at 384. From that premise, the court of appeals reasoned that the only way to treat sec. 564.011 as defining attempt was to construe it to define attempt. After reviewing numerous canons of construction, the court of appeals concluded that when used in connection with a specific statute proscribing not only specific conduct but also an attempt to commit such conduct, the word attempt was to be given its common law meaning. *Id.* at 386. The effect of *Reyes* in prosecutions under such statutes was to create the anomaly of two species of attempt for the same offense: (1) common

law attempt, where a substantive offense is defined as attempting to commit a specific offense, and (2) "substantial step" attempt where the state proceeds under sec. 564.011. Thus, a charge of attempted manufacture of methamphetamine might be a class B felony if charged under sec. 195.211 or a class C felony if charged under sec. 564.011. As noted in *Reyes,* common law attempt had four separate elements: (1) the intent to commit a crime; (2) an overt act toward its commission; (3) failure of consummation, and (4) the apparent possibility of commission. *Id.* at 383 (citing *State v. Thomas,* 438 S.W.2d 441, 446 (Mo.1969)). Under *Reyes,* common law attempt was the more difficult offense to prove in that it required an overt act showing that the defendant's conduct nearly approached consummation of the offense, not just a substantial step toward the completed offense. *Id.* at 384. Substantial step attempt was, in effect, a lesser included offense of common law attempt.

Perhaps as a result of the confusion caused by recognizing two forms of attempt, a number of cases have incorrectly merged the four elements of traditional common law attempt into the standard of substantial step attempt set forth in sec. 564.011. For example, in *State v. Mulder,* 916 S.W.2d 346 (Mo.App.1996), the court, after quoting sec. 564.011.1, states, "The elements necessary to constitute attempt are: (1) the intent to commit the crime, (2) an overt act toward its commission, (3) failure of consummation, and (4) the apparent possibility of commission." *Id.* at 347–48. This is a misstatement of Missouri law, even under *Reyes.* Attempt, under sec. 564.011, has only two elements: (1) the defendant has the purpose to commit the underlying offense, and (2) the doing of an act which is a substantial step toward the commission of that offense. *State v. Molasky,* 765 S.W.2d 597, 601 (Mo. banc

---

2. The exception is that an attempted class C misdemeanor is also a class C misdemeanor.

Sec. 564.011.3.

1989). The attempt statute has substituted proof of "substantial step" for the common law proof of an overt act in perpetration of the crime, apparent possibility of consummation of the crime, and failure to consummate the crime. *State v. Graham,* 2 S.W.3d 859 (Mo.App.1999). To the extent cases have incorporated the four common law elements into the substantial step analysis, they should no longer be followed.[3]

It was persuasively argued in *Reyes* that the legislature's redundant use of attempt, first in the general statute on inchoate offenses and, second, in specific statutes, is not meaningful unless the legislature intended to create two different degrees of attempt to commit certain crimes. However, one explanation for the redundancy is found in the punishment levied for attempted manufacture of drugs. Unlike the lesser punishment for the general inchoate crime of attempt to commit an offense, the legislature has chosen to impose the same punishment for attempted manufacture of methamphetamine as for the consummated crime. *See sec. 195.211.2.* The same is true of other statutes found both within and outside the Criminal Code where attempting the specified crime carries the same punishment as the completed crime.[4] The use of the word "attempt" in these various statutes is not an expression of legislative intent to create two levels of attempt to commit an offense. Rather, the use is a signal that in those prosecutions under those particular statutes the maximum punishment was, in the words of sec. 564.011.3, "otherwise provided" for and intended to be greater than that specified in the general inchoate offense statute.

The court of appeals' premise in *Reyes* that sec. 564.011 does not define an element of any offense is not quite correct.

Nearly every statute declaring a specified conduct to be a crime necessarily defines the elements of an offense. Section 564.011 is no exception. In the case of a general statute, such as sec. 564.011, the General Assembly undoubtedly intended the offense defined in the statute to have effect beyond the four corners of the statute. Further evidence of the General Assembly's intent is gleaned from sec. 556.031, a part of the introductory chapter to Missouri's Criminal Code. In relevant part, it provides:

1. The provisions of this code shall govern the construction and punishment for any offense defined in this code and committed after January 1, 1979, as well as the construction and application of any defense to a prosecution for such an offense.

2. Offenses defined outside [the criminal] code and not repealed shall remain in effect, but unless otherwise expressly provided or unless context otherwise requires, the provisions of this code shall govern the construction of any such offenses committed after January 1, 1979. . . .

*Sec. 556.031.1–.2.*

██ This provision, along with its comments, makes clear that the code governs construction of all criminal offenses whether the offense is defined inside or outside the code in the absence of a specific exception. Section 564.011 also was part of the criminal code that became effective January 1, 1979.

 The court of appeals was correct in many respects in *Reyes.* Specifically, it was correct in stating that the primary rule of statutory construction is to determine and give effect to the intent of the

---

**3.** These cases include *State v. Miller,* 692 S.W.2d 339 (Mo.App.1985); *State v. Hardy,* 735 S.W.2d 153 (Mo.App.1987); *State v. Blaney,* 801 S.W.2d 447 (Mo.App.1990); *State v. Mulder,* 916 S.W.2d 346 (Mo.App.1996); *State v. Motley,* 976 S.W.2d 502 (Mo.App.1998); *State v. Morrow,* 996 S.W.2d 679 (Mo.App.

1999). *See also State v. McCrary,* 900 S.W.2d 227, 231 n. 3 (Mo.App.1995), which appears to insert the requirement of a substantial step into a broader element of an overt act toward commission of the crime.

**4.** See Appendix A attached hereto.

legislature, that the court considers the particular statute together with related statutes which shed light on its meaning, that the court must consider the purpose or goal of the statute and any relevant conditions existing at the time it was enacted, and that when ambiguity exists in criminal statutes they are to be construed more strictly against the state. *Id.* at 385–86 (citing *State v. White*, 622 S.W.2d 939, 944 (Mo. banc 1981) and *State v. Hobokin*, 768 S.W.2d 76, 77 (Mo. banc 1989)). However, the court of appeals in *Reyes* overlooked the rule of construction provided for in sec. 556.031. That section removes the perceived ambiguity described in *Reyes*. An attempt to commit an offense, regardless of whether the attempt is under sec. 564.011 or under separate provisions proscribing attempting a specified crime, means a substantial step toward the commission of an offense. To the extent *Reyes* is inconsistent with this opinion, it and its progeny are overruled.[5] The question then becomes whether, under the facts stated above, the evidence is sufficient to show defendant committed a substantial step toward the completion of manufacturing methamphetamine.

### B.

The state's theory was that Withrow had possession of the east bedroom, the locked closet and the jar where the "substantial step" in the manufacturing process had been started by putting the pills in the liquid. Under the state's theory, if Withrow had either actual or constructive possession of the materials being used to manufacture the controlled substance, the evidence is sufficient to convict.

■■■■ If actual possession is not present, as in this case, constructive possession of the drugs or the drug components and apparatus will satisfy this burden if other facts exist which buttress the inference of the defendant's requisite mental state. ·*State v. Condict*, 952 S.W.2d 784, 786 (Mo.App.1997); *see also* sec. 195.010(33) (defining the terms actual and constructive possession under the Narcotic Drug Act). Constructive possession requires, at a minimum, evidence that the defendant had access to and control over the premises where the materials were found. *State v. Purlee*, 839 S.W.2d 584, 588 (Mo. banc 1992). Exclusive possession of the premises containing the materials raises an inference of possession and control. *Id.* When the accused shares control over the premises, as here, further evidence is needed to connect him to the manufacturing process. *Id.* The mere fact that a defendant is present on the premises where the manufacturing process is occurring does not by itself make a submissible case. *State v. Barber*, 635 S.W.2d 342, 344–45 (Mo.1982). Moreover, proximity to the contraband alone fails to prove ownership. *State v. Bowyer*, 693 S.W.2d 845, 847 (Mo.App.1985). There must be some incriminating evidence implying that the defendant knew of the presence of the manufacturing process, and that the materials or the manufacturing process were under his control. *Purlee*, 839 S.W.2d at 588.

■■■■ The only· evidence linking defendant to the drug components and apparatus was the following: (1) during the time the house was under surveillance, officers observed defendant coming to and going from the residence five or six times; (2) his car was parked at the house on at least two occasions; (3) when executing the search warrant, police found defendant exiting a bedroom containing firearms, drug-making equipment, and a closet, probably locked, with pills undergoing the first

---

**5.** The cases that rely on *Reyes* include: *State v. Kenney*, 973 S.W.2d 536 (Mo.App.1998); *State v. Motley*, 976 S.W.2d 502 (Mo.App. 1998); *State v. Farr*, 978 S.W.2d 448 (Mo. App.1998); *State v. Davis*, 982 S.W.2d 739 (Mo.App.1998); *State v. Bue*, 985 S.W.2d 386 (Mo.App.1999); *State v. Little*, 986 S.W.2d 924 (Mo.App.1999); *Holloway v. State*, 989 S.W.2d 216 (Mo.App.1999); *State v. Graham*, 2 S.W.3d 859 (Mo.App.1999). *See also State v. Frye*, 998 S.W.2d 575 (Mo.App.1999); *State v. Mitchell*, 999 S.W.2d 247 (Mo.App.1999).

stage of methamphetamine production; (4) a strong odor of solvent emitted from the room; and (5) a letter to defendant at a different address in another location in the house. This evidence, at best, indicates that defendant was frequently present in a house in which there was an ongoing attempt to manufacture methamphetamine. The evidence of the actual manufacture was in the east bedroom and, more importantly, in the locked closet. Even viewed in the deferential light owed a jury verdict, the evidence does not support a conclusion that defendant had constructive possession over the bedroom, the closet, or their contents. No evidence demonstrated he lived at the house. Nothing beyond being present in the room truly connects defendant to the manufacturing apparatus or the jar in the closet.

## CONCLUSION

In the absence of constructive possession or that the defendant actually placed the pills in the liquid or otherwise possessed the materials used to commence the drug-making process, the evidence is insufficient to demonstrate his participation in a substantial step necessary to demonstrate an attempt to manufacture the drug. Therefore, the trial court erred in submitting the case to the jury and overruling defendant's motion for judgment of acquittal.

The judgment of the trial court is reversed and the cause remanded to the circuit court of Monroe County with instructions to discharge the defendant.

All concur.

### APPENDIX ·

*Statutes Where Attempting the Specified Crime Carries the Same Punishment as the Completed Crime*

*See* sections:

40.307 (mutiny and sedition),

115.631 (election judge placing or permitting ballot in ballot box not offered by qualified voter; placing fraudulent ballot in ballot box),

115.635 (impeding or preventing the free exercise of the voting rights of another),

115.637 (interfering with any voter outside polling place),

130.028 (coercing the vote of member of labor union or employee),

137.045 (county commissioner or county officer assessing, levying or collecting taxes contrary to law),

137.177 (constructing or erecting a building without securing a building permit),

142.932 (altering the strength or composition of dyed diesel fuel or dyed kerosene dye or marker (RSMo Supp.1998)),

188.080 (unlicensed physician performing abortion),

191.677 (person knowingly infected with HIV donating blood, organs, sperm, or tissue except for medical research),

193.315 (obtaining, possessing, using, selling, or furnishing to another for a deceptive purpose a certificate, record, or report under vital statistic law),

195.211 (distribution, delivery, manufacture, or production of a controlled substance), 195.219 (unlawful endangerment of property),

195.219 (unlawful endangerment of property),

195.222 (first degree trafficking in drugs),

195.223 (second degree trafficking in drugs),

205.967 (unlawfully obtaining public assistance benefits),

217.120 (procuring pardon or parole of offender due to bribery),

217.360 (delivery or concealment of contraband to or at correctional facility),

221.111 (delivery or concealment of contraband to or at county jail or county correctional facility),

254.290 (obstruction of enforcement of state forestry law),

256.483 (presenting registration or seal of another registered geologist),

268.151 (illegal branding),

274.260 (inducing member of a cooperative marketing association to break a contract), 276.536 (preventing the enforcement of grain dealer law),

276.536 (preventing the enforcement of grain dealer law),

291.130 (refusal of industrial inspection),

311.325 (purchase or possession of intoxicating liquor by a minor),

312.407 (purchase or possession of non-intoxicating beer by a minor),

312.480 (evading permit or inspection fee for manufacturers, brewers, and sellers of non-intoxicating beer),

313.670 (wagering on horse race by minor),

313.690 (bribery of horse race track officials; passing or cashing of altered or fraudulent pari-mutual ticket; unauthorized sale of race track admission ticket),

313.830 (claiming, collecting, or taking anything of value in or from gambling games with intent to defraud, without having made a wager, or claiming, collecting, or taking anything of value greater than the amount actually won),

327.111 (using the certificate of registration or seal of another architect),

327.201 (using the certificate of registration or seal of another professional engineer), 327.291 (using the certificate of registration or seal of another land surveyor),

327.291 (using the certificate of registration or seal of another land surveyor),

331.080 (practicing chiropractic without complying with chiropractic law),

334.250 (filing as own the medical license of another or forged affidavit of identification),

361.705 (issuing checks without a license from the director of finance),

407.940 (foreclosure agent inducing an owner to enter a contract not in compliance with law),

436.159 (performing rights society collection of royalty not provided by a contract executed pursuant to law; using any act or practice in negotiating with or retaliating against a proprietor contrary to law (RSMo Supp.1995)),

562.041 (responsibility for the conduct of another (accomplice liability)),

565.050 (first degree assault),

565.060 (second degree assault),

565.065 (unlawful endangerment of another),

565.070 (third degree assault),

565.081 (first degree assault of a law enforcement officer),

565.082 (second degree assault of a law enforcement officer),

565.083 (third degree assault of a law enforcement officer),

565.092 (causing an employee of the department of corrections to come into contact with body fluid (RSMo Supp.1997)),

565.180 (first degree elder abuse),

565.182 (second degree elder abuse),

565.184 (third degree elder abuse),

566.030 (forcible rape),

566.060 (forcible sodomy),

569.085 (unlawful endangerment of property),

570.140 (deceptive business practice),

570.190 (telephone service fraud),

570.210 (library theft),

570.300 (theft of cable television service),

574.105 (money laundering),

575.200 (escape from custody),

575.210 (escape from confinement),

575.230 (aiding the escape of a prisoner),

575.270 (victim tampering),

578.210 (entering a cave or cavern without permission).