**STATE of Missouri, Respondent,**

v.

**Rodney COOPER, Appellant.**

No. ED 81423.

Missouri Court of Appeals,
Eastern District,
Division Two.

June 3, 2003.

1. All rule references are to Mo. R. Crim P.2003, unless otherwise indicated.

Irene Karns, Columbia, MO, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Charnette D. Douglass, Jefferson City, MO, for respondent.

PAUL J. SIMON, Presiding Judge.

Rodney Cooper (defendant) appeals from his conviction following a bench trial for attempt to manufacture a controlled substance, methamphetamine, in violation of Section 195.211 RSMo 2000 (all further references herein shall be to RSMo 2000 unless otherwise indicated). The trial court sentenced defendant to a term of five years of imprisonment in the Missouri De-

partment of Corrections, but suspended execution of the sentence and placed defendant on supervised probation for five years.

On appeal, defendant contends that the trial court: (1) erred in overruling his motion for judgment of acquittal and in sentencing him for attempt to manufacture methamphetamine because the State did not prove that offense beyond a reasonable doubt, in violation of defendant's right to due process of law, in that the State did not present sufficient evidence from which a rational trier of fact could have reached a "subjective state of near certitude" that defendant knew methamphetamine was being manufactured in his home and that he was a participant in the process; and (2) plainly erred when it proceeded to trial without a jury and without a waiver of the right to a jury trial from defendant because such action violated defendant's rights to due process and trial by jury in that there was no waiver in open court and entered of record, there was no waiver attributed to defendant, and since a court may not presume acquiescence from a defendant's silence, there is absolutely no basis in the record to determine that defendant had knowingly, intelligently, and voluntarily waived his right to trial by jury, resulting in a manifest injustice. We reverse and remand.

 Our review of a court-tried criminal case is the same as for a criminal case tried by a jury. Rule 27.01; *State v. Kreyling*, 890 S.W.2d 414, 416 (Mo.App. E.D.1995). We review whether sufficient evidence existed from which the trial court could have found defendant guilty, and in so doing, we accept all evidence and inferences favorable to the guilty verdict and ignore all contrary evidence and inferences. *Kreyling* at 416. We will uphold the trial court's decision unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *Id.*

In the light most favorable to the judgment, the record reveals that defendant was charged by information with two counts: (1) the class C felony of possession of a controlled substance, methamphetamine, in violation of Section 195.202; and (2) the class B felony of attempt to manufacture a controlled substance, methamphetamine, in violation of Section 195.211. We glean from the docket sheets that on March 25, 2002, defendant was "advised of his rights" and entered a plea of guilty to count one, possession of a controlled substance. He was later sentenced to two years in the Missouri Department of Corrections and this sentence was ordered to be served pursuant to the shock incarceration program under Section 559.115. The docket sheets reveal that a bench trial was set for April 1, 2002, on count two, the charge of attempt to manufacture a controlled substance.

On April 1, 2002, the bench trial commenced, and the following evidence was adduced. Bobby Lee Kile (Kile), a narcotics investigator with the Lake Area Narcotics Enforcement Group, testified that on April 17, 2001, Sergeant Oller (Oller) and he responded to 3697 Thenhaus Road in Rosebud, Missouri, at approximately 8:30 or 9:00 p.m., to investigate information received over a period of time that defendant may be involved in the manufacturing and possession of methamphetamine. Kile testified that when they arrived and got out of Oller's vehicle, he "immediately noticed there were solvents." At that point, he testified, they went to the back door, which was the first door towards the driveway of the trailer, knocked, and received no response. Kile testified that they walked to the front door of the trailer, walked on the porch, and knocked

on that door. Again, they did not receive a response. As they started back down the stairs of the porch, they noticed that the smell they had detected earlier was much stronger. Kile testified that the smell was coming from a green duffel bag that was underneath the trailer and outside of a hole in the underpinning.

Kile testified that they went back to the patrol car and called Deputies Hatton and Luke Morgan and that one of the deputies was going to secure the premises with Kile, while the others went to Hermann, Missouri, to apply for a search warrant. He further testified that Oller returned to the location with the search warrant a little after midnight on April 18, 2001. They searched the premises and removed the green duffel bag from under the trailer.

Upon searching the duffel bag, Kile testified that they found three or four jars containing what they refer to as "filter kegs," filters with waste residue commonly filtered out when manufacturing methamphetamine. In the bag, they also found the following: (1) camp fuel and denatured alcohol commonly used to make "the base" in manufacturing methamphetamine; (2) glue sticks; (3) lithium batteries; (4) a large bowl with powder residue; (5) a cooler with spatulas in it; (6) an air pump used as part of an acid generator "used to crystallize the methamphetamine in the base" in the final production process; (7) starting fluid cans; (8) a gallon container of Liquid Fire commonly used to crystallize methamphetamine; and (9) tubing.

Kile testified that after searching the bag, they entered the residence. He could not recall whether they used a key provided by Larry Willard (Willard), the actual property owner, or if they just pushed open the door. He testified that they searched the residence and seized several items located throughout the trailer including guns that were reported to be stolen, sixty to ninety pseudoephedrine tablets, a mixer that had powder residue on it, baggy corners, a small amount of marijuana, and powder residue that later tested positive for methamphetamine. They also found documents that had defendant's name on them, an ashtray with glue sticks and tubing that was identical to those found in the duffel bag, shop vac filters found in a cookie jar that were the same brand and type as ones found in the duffel bag, and empty boxes of Goodsense Nasal Decongestant tablets in the fireplace that appeared as though "somebody attempted to burn them."

Additionally, Kile testified that during their search, defendant returned to the trailer around 3:00 a.m. They approached defendant in his vehicle, advised him they had a search warrant for the residence and that he was under arrest for manufacturing. He testified that they conducted a search of defendant incident to the arrest and found a Tylenol container containing two bags. One bag contained a residue and the other contained an actual powder. A search of his vehicle turned up a two-way radio. Kile testified that defendant stated that the green duffel bag found under the trailer was not his, that he had used methamphetamine but did not manufacture it, that he used the two way radio found in his vehicle to communicate with James Farmer (Farmer), and that the green duffel bag belonged to Farmer. Kile testified that he asked defendant if he was willing to make a phone call to Farmer for him to pick up the bag. Defendant did so. Kile recorded the phone conversation with a digital recorder and phone. The tape of this conversation was admitted into evidence as State's Exhibit 28 and was played for the trial court.

On cross-examination, Kile testified that he observed Farmer arrive at the premises

and carry the green duffel bag to his vehicle. On redirect examination, Kile testified that the green duffel bag was located at the end of the driveway when Farmer arrived, and defendant was standing approximately fifteen feet away from Farmer. Prior to leaving with the bag, Farmer was arrested.

Willard testified that he owns a farm located at 3693 Thenhaus Road and has owned the property for approximately ten years. He testified that in April 2001, he rented out two trailers and that defendant rented the trailer located at 3697 Thenhaus Road and was its sole occupant. He testified that there was excessive traffic along the driveway to the trailer and that on some nights, especially weekends, twenty-five or thirty cars came in and out of the driveway. Additionally, Willard testified that on April 17 and the morning of April 18, he gave the police keys to open the trailer.

Karen Schell (Shell), a criminalist with the Missouri State Highway Patrol Crime Lab, testified that she performed three types of analysis and found that State's Exhibit 27–B, a sealed plastic bag containing a plastic straw, and State's Exhibit 27–C, a rubber straw-like tubing, contained methamphetamine residue. She testified that State's Exhibit 27–A, a sealed plastic bag, contained pseudoephedrine. These exhibits were admitted into evidence.

Shell testified that State's Exhibit 27–D, the mixer, tested positive for methamphetamine residue, as well, and was admitted into evidence.

Defendant's counsel orally moved for judgment of acquittal at the close of the State's evidence, which was denied.

Defendant testified that Farmer and defendant's girlfriend, Brenda Craig (Craig), stayed in the trailer periodically, but that defendant and his son were the only people who lived in the trailer. He testified also that he saw the green duffel bag in Farmer's trunk on the afternoon of April 16, and that is how he identified it as Farmer's property. He testified that he didn't see the green duffel bag, again, until the morning of April 18 and that he didn't notice it was under the trailer. He testified that he had given Farmer a key to the front door of the trailer and that Farmer had access to go in and out of the trailer when defendant was not there. He denied ever manufacturing methamphetamine inside the trailer, knowing how to manufacture methamphetamine, and intending to manufacture methamphetamine. Defendant testified that the decongestant tablets found in the trailer belonged to Craig. He testified that Craig, Farmer and he stayed at the trailer the night of April 16 and that when he and Craig left the house on the morning of April 17, Farmer remained at the trailer.

Craig testified that she did not manufacture methamphetamine at the trailer where defendant lived. She testified also that she saw the green duffel bag in Farmer's trunk and that the decongestant tablets found in the trailer could have been her tablets.

Defense counsel orally renewed his motion for judgment of acquittal at the close of all the evidence, which was denied.

After taking the case under advisement, the trial court found defendant guilty of attempting to produce a controlled substance, methamphetamine. Defendant was sentenced to five years of imprisonment in the Missouri Department of Corrections. The trial court suspended execution of the sentence and placed defendant on probation for five years.

■ Because it is dispositive, we initially address defendant's second point.

In his second point on appeal, defendant contends that the trial court plainly erred when it proceeded to trial without a jury and without a waiver of the right to a jury trial from defendant because such action violated defendant's rights to due process and trial by jury in that there was no waiver in open court and entered of record, there was no waiver attributed to defendant, and since a court may not presume acquiescence from a defendant's silence, there is absolutely no basis in the record to determine that defendant had knowingly, intelligently, and voluntarily waived his right to trial by jury, resulting in a manifest injustice.

Defendant did not object to the commencement of his trial without the presence of a jury. Therefore, he seeks plain error review under Rule 30.20, which provides in pertinent part:

> [P]lain errors affecting substantial rights may be considered in the discretion of the court when the court finds that manifest injustice or miscarriage of justice has resulted therefrom.

Pursuant to Rule 27.01:

> (a) All issues of fact in any criminal case shall be tried by a jury ... unless trial by jury be waived as provided in this Rule.
> (b) The defendant may, with the assent of the court, waive a trial by jury and submit the trial of any criminal case to the court, whose findings shall have the force and effect of the verdict of a jury. In felony cases such waiver by the defendant shall be made in open court and entered of record.

In its brief, the State concedes that the record on appeal shows no waiver by defendant of his right to a jury trial. In fact, there is no record of defendant's waiver of a jury trial in the docket sheets, legal file, or transcribed proceedings. Such failure to fulfill the requirements of Rule 27.01(b) that a waiver of trial by jury shall be made in open court and entered of record warrants a reversal of defendant's sentence and a remand for a new trial under plain error review. *State v. Rulo*, 976 S.W.2d 650, 653 (Mo.App. S.D.1998). Accordingly, the judgment is reversed and the case is remanded for a new trial.

Although we find defendant's second point to be dispositive, we shall address defendant's first point on appeal since it is necessary to our decision to remand.

■ In his first point, defendant contends that the trial court erred in overruling his motion for judgment of acquittal and in sentencing him for attempt to manufacture methamphetamine because the State did not prove that offense beyond a reasonable doubt, in violation of defendant's right to due process of law, in that the State did not present sufficient evidence from which a rational trier of fact could have reached a "subjective state of near certitude" that defendant knew methamphetamine was being manufactured in his home and that he was a participant in the process.

We note that defendant did not file a motion for new trial. However, a motion for new trial is not necessary to preserve any matter for appellate review of cases tried without a jury. Rule 29.11(e)(2).

Section 195.211.1 provides in pertinent part:

> [I]t is unlawful for any person to distribute, deliver, manufacture, produce or attempt to distribute, deliver, manufacture or produce a controlled substance or to possess with intent to distribute, deliver, manufacture, or produce a controlled substance

The State's contention as set forth in the information filed against defendant was that defendant "knowingly attempted to

manufacture methamphetamine, a controlled substance, by acquiring ingredients for the manufacture of methamphetamine, knowing that it was a controlled substance."

■ To find defendant guilty of attempt to manufacture methamphetamine, the State must prove: (1) defendant had the purpose of committing the underlying offense of manufacturing methamphetamine, and (2) defendant did an act which constitutes a substantial step toward the completion of manufacturing methamphetamine. *State v. Withrow*, 8 S.W.3d 75, 79–80 (Mo. banc 1999). Thus, defendant must have had either actual or constructive possession of the materials being used to manufacture methamphetamine for the evidence to be sufficient to convict. *Id.* at 80.

■ If actual possession is not present, constructive possession of the ingredients will satisfy this burden if other facts exist which buttress the inference of defendant's requisite mental state. *Id.* At a minimum, constructive possession requires evidence that defendant had access to and control over the premises where the proscribed materials were found. *Id.* Exclusive possession of the premises containing the proscribed materials raises an inference of possession and control. *Id.* When an accused shares control over the premises, further evidence is needed to connect him or her to the manufacturing process. *Id.* The mere fact that defendant is present on the premises where the manufacturing process is occurring does not by itself make a submissible case, and there must be some incriminating evidence implying that defendant knew of the presence of the manufacturing process and that the materials or the manufacturing process were under his control. *Id.*

Here, defendant testified that he and his son were the only people who lived in the trailer. Willard testified that he rented the trailer to defendant, defendant was its sole occupant, and there was excessive traffic along the driveway to the trailer. There was ample evidence that paraphernalia such as the mixer and shop vac filters and ingredients such as camp fuel, denatured alcohol, glue sticks, lithium batteries, and psuedoephedrine and decongestant tablets used in manufacturing methamphetamine were located throughout the trailer and found to be in various stages of production. In fact, the mixer and other items seized in the search of the premises contained methamphetamine residue. Thus, we conclude the State presented sufficient evidence that defendant knew of the presence of the manufacturing of methamphetamine in his trailer and that the materials were under his control. Therefore, the trial court did not err in overruling defendant's motion for judgment of acquittal.

Judgment reversed and remanded.

GARY M. GAERTNER, SR. and KATHIANNE KNAUP CRANE, JJ., concur.