

# In the Missouri Court of Appeals
# Eastern District

## DIVISION FOUR

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED100398 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of Montgomery County |
| vs. | ) | |
| | ) | Honorable Wesley Clay Dalton |
| JOEY LEE GLASS, | ) | |
| | ) | |
| Appellant. | ) | Filed: September 2, 2014 |

Joey Lee Glass ("Defendant") appeals from a judgment on a jury verdict finding him guilty of one count of attempt to manufacture a controlled substance (methamphetamine), in violation of Section 195.211, RSMo (2000);[1] one count of possession of a controlled substance (methamphetamine), in violation of Section 195.202; and two counts of unlawful possession of a firearm, in violation of Section 571.070.1(1). On appeal, Defendant claims that the trial court erred in (1) denying his motion for judgment of acquittal as to all counts because the evidence was insufficient to sustain convictions and (2) entering a judgment on the jury's guilty verdict on two counts of unlawful possession of a firearm because doing so constituted double jeopardy. We reverse the judgment with instructions to discharge Defendant.

---

[1] All further statutory references are to RSMo (2000).

# I. BACKGROUND

Defendant was charged with attempt to manufacture methamphetamine (Count I), possession of methamphetamine (Count II), and two counts of unlawful possession of a firearm (Counts III and IV) for events that occurred on July 29, 2010. The facts, as adduced by the evidence during the July 29, 2013 jury trial, are not in dispute.

Drug task force officers had been investigating a death from a possible methamphetamine overdose. On July 29, 2010, they arrived at the last place the deceased man had been, the residence of Defendant's parents, Charles[2] and Melinda Glass, to interview potential witnesses. When the officers arrived, they separated Charles and Melinda for the interview process; Charles was questioned outside their mobile home, and Melinda was questioned inside. While inside, Melinda lifted "a wood piece" that was on the living room table, and Sergeant Michael Cheek observed rolling paper, a pen "tooter,"[3] foil, pipes, bags of suspected marijuana, and cigarettes with suspected marijuana on that table. At this point, Sergeant Cheek went outside with Melinda to inform the other officers of his observations. Defendant, who had been staying on the living room couch of his parents' home, then arrived on the premises. Sergeant Cheek testified that he did not recall whether Defendant had arrived on foot or in a vehicle. Defendant claimed ownership of everything in the living room, and the officers obtained consent from Charles and Melinda to search the remainder of the residence.

During their search of the mobile home, officers discovered two firearms in an open gun cabinet in the bedroom; a ledger with law enforcement radio scanner codes, scales, bags with white powder, tablets, foil with residue, a pen and a glass pipe with powder residue in that same

---

[2] During trial and on appeal, both parties referred to Defendant's father as either Charles or Ed. Because he was first called Charles, we shall use that name.

[3] Sergeant Cheek testified that empty pen cartridges are commonly used to inhale methamphetamine after it has been heated and turned into vapor.

bedroom; a "power hitter" canister and glass pipe with residue next to the living room couch; and "a lot of foil with burnt residue" in a coffee can in the living room. Sergeant Cheek also testified that there was a van, a tent, and a shed on the property, "within a city block" of the mobile home. In the van, officers discovered cans of starting fluid with holes punched in them. In the tent, they found a cold pack, tubing, Heet, Coleman fuel, a Camel tin containing a burnt pen barrel, a blue container containing bags of white powder, foil, and a coffee filter with residue. Sergeant Cheek testified that from his training and experience, he knew that the items found in the van and the tent were used in the manufacturing of methamphetamine. He testified that the items found in the living room, however, were for the consumption of methamphetamine.

During trial, the State offered into evidence the coffee filter with residue and three plastic bags with powder and residue. These items were all admitted, and a laboratory witness testified that all four exhibits had tested positively for methamphetamine. The parties also stipulated that Defendant had been convicted of a felony on November 17, 2005.

Defendant filed a Motion for Judgment of Acquittal at the Close of the State's Evidence and then a Motion for Judgment of Acquittal at the Close of All the Evidence, wherein he argued that the State had failed to make a submissible case as to all counts. Both motions were denied. After deliberation, the jury returned guilty verdicts on all counts. Sentencing was set for September 4, 2013. On that date, Defendant filed a motion for judgment notwithstanding the verdict and for new trial, wherein he alleged that the trial court erred in denying his motions for judgment of acquittal and argued that the State had presented insufficient evidence to sustain the guilty verdicts. The trial court denied this motion and sentenced Defendant to twelve years' imprisonment on Count I, seven years' imprisonment on Counts II and III, and four years' imprisonment on Count IV, all time to be served concurrently. This appeal follows.

**II. DISCUSSION**

Defendant raises four points on appeal. His first three points challenge the sufficiency of the evidence supporting the convictions for, respectively, attempt to manufacture methamphetamine (Count I), possession of methamphetamine (Count II), and unlawful possession of a firearm (Counts III and IV). Defendant's fourth point alleges that the trial court erred in entering judgment on the guilty verdict on Counts III and IV because convictions for two counts of unlawful possession of a firearm violated his double jeopardy rights. Because we find the first three points dispositive, we do not engage in a discussion of Defendant's fourth point.

Standard of Review

We review the sufficiency of the evidence in the light most favorable to the finding of guilt. State v. Belton, 153 S.W.3d 307, 309 (Mo. banc 2005). Evidence is sufficient to support a finding of guilt if a reasonable inference supports that finding even if other "equally valid" inferences do not. State v. Freeman, 269 S.W.3d 422, 424 n. 4 (Mo. banc 2008). "We disregard all inferences contrary to the verdict, unless they are such a natural and logical extension of the evidence that a reasonable juror would be unable to disregard them. We may not supply missing evidence or give the State the benefit of unreasonable, speculative or forced inferences." State v. Taylor, 407 S.W.3d 153, 159 (Mo. App. E.D. 2013) (citing State v. Whalen, 49 S.W.3d 181, 184 (Mo. banc 2001)). The State, however, is held to proof of the elements of the offense actually charged, not one that might have been charged. State v. Keeler, 856 S.W.2d 928, 931 (Mo. App. S.D. 1993) (citing State v. Palmer, 822 S.W.2d 536, 540-41 (Mo. App. S.D. 1992)).

I.     Attempt to Manufacture Methamphetamine

In his first point, Defendant alleges the trial court erred in denying his motion for judgment of acquittal as to Count I because there was insufficient evidence to support a

4

conviction of attempt to manufacture a controlled substance. Specifically, Defendant claims that the evidence was insufficient to support a finding that Defendant had "combined chemicals and precursors with various items of drug paraphernalia."

Like other attempt offenses, "[c]onviction on a charge of attempting to manufacture methamphetamine requires proof that: (1) the defendant took a substantial step toward commission of the offense; and (2) the defendant engaged in such conduct with the purpose of committing the offense." State v. McLarty, 327 S.W.3d 557, 562 (Mo. App. S.D. 2010). "A 'substantial step' is conduct which is strongly corroborative of the firmness of the actor's purpose to complete the commission of the offense." Section 564.011; State v. Withrow, 8 S.W.3d 75, 78 (Mo. banc 1999). Here, Defendant was charged with having "attempted to manufacture methamphetamine, a controlled substance, by comb[in]ing chemicals and precursors with various items of drug paraphernalia to create methamphetamine." "'Where the act constituting the crime is specified in the charge, the State is held to proof of that act; and a defendant may be convicted only on that act.'" State v. Armstrong, 863 S.W.2d 374, 377 (Mo. App. E.D. 1993) (citing State v. Edsall, 781 S.W.2d 561, 564 (Mo. App. S.D. 1989)). When the evidence fails to show that a defendant committed a crime in the specific manner charged, reversal is required. Edsall, 781 S.W.2d at 565. Therefore, the elements of this offense, as charged, are: (1) that Defendant combined chemicals and methamphetamine precursors with paraphernalia, and (2) that Defendant did so with the purpose of manufacturing methamphetamine.

In the event of joint control over premises where the controlled substance was found, more evidence than just a defendant's presence on the premises is necessary to connect that defendant to the manufacturing process. Withrow, 8 S.W.3d at 80 (citing State v. Purlee, 839 S.W.2d 584, 587 (Mo. banc 1992)). See State v. Ray, 747 S.W.2d 765, 766 (Mo. App. E.D.

5

1988) (citing State v. Barber, 635 S.W.2d 342, 344 (Mo. 1982)); State v. Yarber, 5 S.W.3d 592, 593-94 (Mo. App. S.D. 1999). There must be some incriminating evidence that the defendant knew of the manufacturing process and that the materials or manufacturing were under his control. Withrow, 8 S.W.3d at 80 (citing Purlee, 839 S.W.2d at 587). "Such additional evidence includes: the presence of a large quantity of the substance coupled with ready access to the drugs; being in close proximity to drugs or drug paraphernalia in plain view of the police; nervousness exhibited during the search of the premises; the subject of the controversy in plain view; commingling of the controlled substance with the defendant's personal belongings; and the conduct and statements made by the accused." State v. Foulks, 72 S.W.3d 322, 324-25 (Mo. App. S.D. 2002) (citing Purlee, 839 S.W.2d at 588-89); State v. Morris, 41 S.W.3d 494, 497 (Mo. App. E.D. 2000); State v. West, 21 S.W.3d 59, 63 (Mo. App. W.D. 2000); State v. Sours, 946 S.W.2d 747, 752 (Mo. App. S.D. 1997)). The totality of the circumstances must be considered in determining the sufficiency of the evidence. Purlee, 839 S.W.2d at 589; Foulks, 72 S.W.3d at 325 (citing West, 21 S.W.3d at 63).

Here, the evidence of incriminating circumstances presented by the State was either ambiguous or completely absent. The only evidence that could be construed as connecting Defendant to the manufacturing equipment was the fact that Defendant was apparently staying on the couch in the living room of his parents' home and had verbally claimed all the paraphernalia items found in the living room. The methamphetamine paraphernalia claimed by Defendant—namely, the rolling paper, the pen "tooter," foil, "power hitter" canister, and metal pipe[4]—was for *consumption*, not manufacturing. Defendant was not found in close proximity to any controlled substances or paraphernalia, as he arrived after the officers had discovered these

---

[4] Defendant also claimed a glass pipe with suspected marijuana residue, a bag of suspected marijuana, and a cigarette with suspected marijuana, all of which were on the living room table with the pen "tooter" and foil.

items and before they discovered the items in the van and tent.  Cf. State v. Jackson, 576 S.W.2d 756, 757 (Mo. App. E.D. 1979) (sufficient evidence of possession found where defendant was found two feet from multiple paraphernalia items and heroin capsules in plain view on kitchen table).  In fact, Sergeant Cheek testified that he did not even recall whether Defendant had arrived on foot or in a vehicle.  There was not a large quantity of the illegal substance; the items tested, which were found in the van and the tent, contained 0.01 grams, 0.05 grams, and 0.01 grams of methamphetamine, respectively.  Cf. State v. Keeper, 787 S.W.2d 887, 890 (Mo. App. E.D. 1990) (sufficient evidence of possession found where half-gallon of phencyclidine [PCP] was found in defendant's home).  It does not appear that Sergeant Cheek had requested testing of the paraphernalia discovered in the living room.  There was no testimony by anyone who had allegedly seen Defendant manufacture or consume methamphetamine.  Cf. State v. Carl, 389 S.W.3d 276, 286-87 (Mo. App. W.D. 2013) (sufficient evidence of possession found where defendant's friend had testified about defendant's weekly manufacturing of methamphetamine); State v. Wurtzberger, 265 S.W.3d 329, 337-38 (Mo. App. E.D. 2008) (sufficient evidence of possession found where defendant's girlfriend testified that they had used methamphetamine earlier that day).  There was no evidence that Defendant had routine access to and control over the van, the tent, or the shed.  Cf. Wurtzberger, 265 S.W.3d at 337 (sufficient evidence of possession found where methamphetamine, marijuana, and paraphernalia were found in plain view in kitchen and living room, common areas that were routinely accessed by defendant and his girlfriend, and defendant's father testified that defendant had routine access to a shed that housed numerous items used in manufacturing methamphetamine).  The only evidence even connecting the van and the tent to the mobile home was testimony that the tent was "within a city block" of the mobile home, and the van and tent were "within a small distance of each other."

7

Neither Defendant nor anyone else made statements about any of the items found in the tent or the shed. Cf. State v. Neel, 81 S.W.3d 86, 93-94 (Mo. App. W.D. 2002) (sufficient evidence of possession found where defendant had told officers that she knew "a cook" nearby and that she had thrown coffee filters "full of dope" out the window when she saw officers).

The facts here are similar to those in State v. Withrow, 8 S.W.3d 75 (Mo. banc 1999). There, the Missouri Supreme Court found that the evidence failed to support a conviction of attempt to manufacture methamphetamine. The evidence adduced at trial showed that the defendant had been observed coming and going from the residence, his car had been parked at the house, and the defendant had been exiting a bedroom containing drug-making equipment and pills undergoing the first stage of manufacturing in a locked closet. The Court held that "[t]his evidence, at best, indicates that defendant was frequently present in a house in which there was an ongoing attempt to manufacture methamphetamine." Id. at 82.

Here, similarly, the evidence showed that Defendant had been staying on the couch at his parents' residence and at some point, had actual possession of the items found in the living room. Even when viewed in the light most deferential to the guilty verdict,[5] none of these items indicated production of methamphetamine, much less that Defendant had specifically "combined chemicals and precursors." The State therefore presented no evidence to support the first element of the offense as charged in Count I. Accordingly, the trial court erred in denying Defendant's motion for judgment of acquittal as to Count I.

Point one is granted.

II.     Possession of Methamphetamine

---

[5] In some cases, an inference of possession is reasonable where it is possible that a jury may have disbelieved certain exonerating testimony. See, e.g., State v. Richardson, 296 S.W.3d 21, 24 n. 4 (Mo. App. S.D. 2009) (where finder of fact was free to disbelieve defendant's self-serving statements and believe officer's testimony that supported an inference of possession of controlled substance). Here, however, *there was simply no evidence **whatsoever** of Defendant's possession of manufacturing equipment.*

In his second point, Defendant claims the trial court erred in denying his motion for judgment of acquittal as to Count II because there was insufficient evidence to demonstrate that Defendant had knowledge of the methamphetamine in his parents' bedroom and the shed, or that he had exercised control over it.

"To sustain a conviction for possession of a controlled substance, the State must prove (1) conscious and intentional possession of the substance, either actual or constructive, and (2) awareness of the presence and nature of the substance." Purlee, 839 S.W.2d at 587. See Section 195.202. Joint possession for a possessory offense is the same as joint possession for a manufacturing offense in that the State must present some incriminating circumstance beyond the defendant's mere presence on the premises where drugs are found. See Purlee, 839 S.W.2d at 588.

Here, Defendant arrived on the premises after Sergeant Cheek had discovered the rolling paper, pen "tooter," foil, metal pipe, glass pipe with suspected marijuana, bags of suspected marijuana, and cigarettes with suspected marijuana on the living room table. He was not found in close proximity to a controlled substance such that it would support an inference of knowledge.[6] Cf. State v. Dowell, 25 S.W.3d 594, 603 (Mo. App. W.D. 2000) (sufficient evidence of possession found where defendant's possession of methamphetamine on his person was relevant to whether he had requisite knowledge to support a conviction for manufacturing methamphetamine); State v. Greer, 918 S.W.2d 327, 329-30 (Mo. App. E.D. 1996) (sufficient evidence of possession found where defendant was found alone, standing in front of a sink with

---

[6] We note that a jury may reasonably infer familiarity with controlled substances, in general, and intent to possess if a defendant is found in possession of just one type of substance. West, 21 S.W.3d at 65 (where jury could reasonably infer that defendant, who had marijuana in her purse, was familiar with illegal substances); State v. Dennis, 990 S.W.2d 78, 81 (Mo. App. W.D. 1999) (where it was reasonable to infer that defendant, who had marijuana and pills on his person, had intent to possess methamphetamine found in his house). However, no evidence was presented at trial that the suspected marijuana was in fact marijuana.

water running, and rock cocaine was found in the sink pipes).  After Defendant claimed the items in the living room, officers found a "power hitter" canister, a glass pipe with residue, and foil with residue in a coffee grounds can.  At trial, no evidence was offered that the items claimed by Defendant in fact contained methamphetamine; rather, the laboratory analyst testified about having tested residue on a coffee filter and powder in plastic baggies, which were found in Charles and Melinda Glass's bedroom and in the tent on Charles and Melinda Glass's property.  Although Sergeant Cheek testified that Defendant had claimed multiple items of paraphernalia generally used to ingest methamphetamine, there is no evidence that any of these items were tested.[7]  There was not any evidence as to when, if ever, Defendant had used the paraphernalia.  Cf. State v. Smith, 808 S.W.2d 24, 26 (Mo. App. E.D. 1991) (sufficient evidence of possession found where defendant had told police that cocaine residue in syringe was left over from a "hit" he had taken from that syringe earlier that day).  Simply put, there was no shred of evidence presented at trial to support a finding that Defendant had constructively possessed anything other than paraphernalia with traces of suspected (but never confirmed) methamphetamine.  Therefore, the trial court erred in denying Defendant's motion for judgment of acquittal as to Count II.

Point two is granted.

III.    Unlawful Possession of Firearm

---

[7] There was testimony that a metal pipe and some foil found in the living room featured suspected methamphetamine residue.  The case law as to whether one can knowingly possess trace amounts of an illegal substance appears to be unsettled.  Compare State v. Baker, 912 S.W.2d 541, 545 (Mo. App. W.D. 1995) ("*In every case we have read there has been at least a measurable quantity of the narcotic found.*"); State v. Polk, 529 S.W.2d 490, 492 (Mo. App. 1975) (same); with State v. Hill, 929 S.W.2d 258, 262 (Mo. App. E.D. 1996) (where evidence was sufficient to support possession conviction where trace amount of cocaine was found in a straw in defendant's bedroom); State v. Spraggins, 839 S.W.2d 599, 603-04 (Mo. App. E.D. 1992) (where possession conviction was supported by evidence of cocaine and heroin residue on the bottom of aluminum can found on defendant's person).  Here, however, the evidence did not show a simply immeasurable amount; the evidence failed to show *any* amount of methamphetamine *whatsoever*.  The record does not reflect that *any* of the items in the living room were tested for the presence of controlled substances.

In his third point, Defendant alleges the trial court erred in denying his motion for judgment of acquittal as to Counts III and IV because there was insufficient evidence that Defendant had knowledge of or exercised control over the firearms found in his parents' bedroom.

The elements of unlawful possession of a firearm are: (1) knowing possession of a firearm (2) by a person who had been convicted of a felony. Section 571.070.1. To show any kind of possession, the State is required to prove, "'at a minimum, that the defendant had access to and control over the area where the contraband was found.'" State v. Evans, 410 S.W.3d 258, 262 (Mo. App. W.D. 2013) (quoting State v. Roggenbuck, 387 S.W.3d 376, 382 (Mo. banc 2012)). In joint possession cases such as this, the State is also required to present evidence of additional incriminating circumstances indicating a defendant's knowledge of and control over the firearms. Evans, 410 S.W.3d at 263.

Here, the firearms were found in an open gun cabinet in Charles and Melinda Glass's bedroom. There was no evidence of any statements made about the weapons, who used the weapons, or who owned the weapons. There was no evidence that Defendant had easy and routine access to his parents' bedroom. Cf. State v. Langdon, 110 S.W.3d 807, 810, 814 (Mo. banc 2003) (where firearm was found in master bedroom in dresser drawer that contained only men's clothing, and defendant appeared to be only male living there); State v. McCall, 412 S.W.3d 370, 374 (Mo. App. E.D. 2013) (where contraband was found in master bedroom with mail addressed to defendant and medication prescribed to defendant); Evans, 410 S.W.3d at 263-64 (where defendant owned home in which weapons were found, admitted that he knew the weapons were there, and weapons were found in kitchen). There was no evidence to indicate that Defendant had joint constructive possession of the firearms found in his parents' bedroom at

11

any point in time.  In fact, the State made the argument to the court and the jury that Defendant exercised control over the firearms *simply because his parents did not remove them from the home.*  This is not the law in Missouri.  Thus, the trial court erred in denying Defendant's motion for judgment of acquittal as to Counts III and IV.

Point three is granted.

### III. CONCLUSION

The judgment of the trial court is reversed, and Defendant is discharged on all counts.

_____

ROY L. RICHTER, Judge

Patricia L. Cohen, P.J., concurs.
Robert M. Clayton III, J., concurs.

12