v.

**The STATE of Texas, Appellee.**

**No. 09–84–315 CV.**

Court of Appeals of Texas, Beaumont.

Aug. 23, 1984.

Pannal Alan Sanders, Orange, for appellant.

Jimmy Burnitt, County Atty's Office, Orange, for appellee.

## OPINION

BROOKSHIRE, Justice.

Temporary mental commitment proceeding. An application for court-ordered mental health services was filed in May, 1984, alleging that the Proposed Patient was mentally ill and met the criteria for court-ordered mental health services pursuant to TEX.REV.CIV.STAT.ANN. Art. 5547–50 (Vernon's Supp.1984) being an article in the Texas Mental Health Code. The applicant was a jailer-custodian of the proposed patient.

On the same date of the filing, the court appointed an attorney at law to represent N.W. A hearing was set and held on the application without delay. At the hearing the custodian-jailer testified. This witness also served as administrator of the Orange County jail. A physician specializing and qualifying as an expert psychiatrist was the State's second witness. The third witness was a qualified psychologist with an educational background resulting in a Master's Degree in Clinical Psychology.

The psychiatrist had been practicing his specialty since 1959 and was accepted as an expert witness in the field of psychiatry by the attorney for N.W. The psychologist had practiced his profession for approximately 7 years and had done doctoral work toward his Ph.D. degree. The psychologist was tendered as an expert witness in his field and the Appellant had no objection. The psychiatrist had had 3 interviews or visits with the Appellant; the psychologist had had 4.

■ The Appellant brings two points of error. The first is that the trial court erred in denying the Proposed Patient's Motion to Dismiss due to "an entire lack of identification of Proposed Patient at trial". The administrator-custodian-jailer of the Orange County jail testified unequivocally that he was familiar with a person by the name of N.W. and that the said N.W. was presently incarcerated in the Orange County jail and that the same person was in the courtroom. The psychiatrist unequivocally testified as to interviewing and examining

a person that had the same name—having seen and examined the same person three times. The psychiatrist said that he was familiar with this person—the person whose full name was set out in the statement of facts.

The psychologist unequivocally testified that he had met and talked with N.W. four times, having seen him in the Orange Memorial Hospital and later at the county jail. Both the psychiatrist and psychologist had given the proper warnings and admonitions to Appellant. We find that the court did not commit error as charged in the first point. Moreover, the Appellant took the stand and identified himself, very specifically, by his first, middle and last names and testified that he was presently being detained at the date of the hearing in the county jail.

TEX.REV.CIV.STAT.ANN. Art. 5547–48(d) (Vernon's Supp.1984) provides that:

"(d) The Rules of Evidence applicable in civil litigation shall govern the proceedings...."

generally. *Article 5547–48(e)* provides that the proof shall be "by clear and convincing evidence".

■ Appellant contends that court-ordered commitment proceedings are in the nature of criminal proceedings because they involve coerced restraint of an individual's liberty. In Appellant's able argument he cites *Phillips v. State*, 164 Tex.Cr.R. 78, 297 S.W.2d 134 (1957); *Holland v. State*, 152 Tex.Cr.R. 552, 216 S.W.2d 228 (1949). The *Phillips case*, supra, involved misdemeanor swindling. It was a classical, traditional criminal proceeding. The prosecuting witness in *Phillips, supra,* testified that the defendant looked like one of the men involved in the swindling scheme. *Her testimony was very equivocal.* The prosecuting witness *could not recognize* the defendant in court. The *Holland case*, *supra*, involved a conviction for murder with the death penalty assessed. The deceased had been the Sheriff of Crosby County. Witness Flowers testified that he had seen a man, heard shots and had seen gun flashes. Flowers saw a " 'shiny' object in appellant's hand". The defendant, Holland, had been seen with a shiny object in his hand rapidly leaving the place where the sheriff's body was found, the defendant getting into his car and driving away. There was other evidence, of course, but under this set of circumstances the court held that the facts were sufficient to warrant the jury's conclusion of guilt of the defendant, Holland. The *Holland case, supra,* was reversed and remanded on a procedural point because the trial judge improperly refused to approve a certain bill of exceptions. We find that the cases cited by Appellant are meaningfully different and distinguishable. They are not parallel and controlling of this appeal. We hold that the Appellant's contentions in this regard are not sustainable. This proceeding is not to be treated as a criminal case with all the procedural requirements of a criminal hearing strictly applicable. *Jones v. State*, 610 S.W.2d 535 (Tex.Civ.App.—Houston [1st Dist.] 1980, ref'd n.r.e.). *See Addington v. Texas*, 441 U.S. 418, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979). Under this record, Point of Error 1 is disallowed.

■ The second error urges that the evidence adduced at the hearing was both legally and factually insufficient to support the order of the court. The lay witness involved testified that the Appellant was seen drinking out of the toilet, washing out of the toilet and brushing his teeth out of the toilet; that "he is never in clothes"; that, repeatedly, he stood nude in his bunk; that he acted in a threatening manner towards the other jailers. The psychiatrist testified that the Appellant had been definitely diagnosed as suffering from a mental condition known as paranoid schizophrenia; that the Appellant had most of the primary symptoms of that malady; that he had some loss of reality; that his emotional stance had altered. The psychiatrist felt that the Appellant was "very much in need of treatment". On the second examination, the Appellant's condition had progressed to the point that "my impression was that he was commitable [sic] because he had reached a point of being dangerous". It

was the psychiatrist's expert opinion that Appellant was likely to cause serious harm to others because of a past involvement with firearms. Further, the Appellant had identified certain people as being against him, as being his oppressors and Appellant "having a large amount of poorly controlled hostility toward them". The psychiatrist also swore that if the Appellant did not receive treatment he would continue to suffer severe and abnormal mental, emotional and physical distress and would continue to experience deterioration of his ability to function independently and Appellant was unable to make a rational and informed decision as to whether or not to submit to treatment.

The psychologist found that the Appellant exhibited symptoms of paranoid schizophrenia, that his thought processes were basically tangential, that he sometimes became extremely agitated with confusion, suspicious ideation and felt that others might be conspiring against him. The psychologist's opinion and prognosis was basically harmonious with and parallel to that of the psychiatrist. It would serve no useful purpose to extend this opinion by reciting a more detailed resume of the evidence.

At the end of the hearing, the trial court found that the evidence showed, by clear and convincing proof, that the proposed patient was mentally ill and that a probable continued deterioration of the proposed patient's condition would severely restrict his ability to make a rational, informed or independent judgment on voluntarily seeking treatment. The trial court further found by clear and convincing proof that the Appellant may be dangerous to others. The court found and ordered required court-ordered mental health services. We perceive that the findings and orders of the trial court were in conformity with TEX.REV. CIV.STAT.ANN. Art. 5547–50(b)(1)(2)(ii) and (iii) (Vernon's Supp.1984). We find that the nature and basis of the evidence complies with *Article 5547–50(c)*. The United States Supreme Court wrote, in *Addington, supra,* 441 U.S. at 425, 428, and 431, 99 S.Ct. at 1809, 1811, and 1812, 60 L.Ed.2d, at 330, 331, 332, 333 and 334:

"[W]e must assess both the extent of the individual's interest in not being involuntarily confined indefinitely and the state's interest in committing the emotionally disturbed under a particular standard of proof. Moreover, we must be mindful that the function of legal process is to minimize the risk of erroneous decisions....

"This Court repeatedly has recognized that civil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection. (Omitting cited cases) Moreover, it is indisputable that involuntary commitment to a mental hospital after a finding of probable dangerousness to self or others can engender adverse social consequences to the individual....

"The state has a legitimate interest under its parens patriae powers in providing care to its citizens who are unable because of emotional disorders to care for themselves; the state also has authority under its police power to protect the community from the dangerous tendencies of some who are mentally ill....

. . . .

"However, even though an erroneous confinement should be avoided in the first instance, the layers of professional review and observation of the patient's condition, and the concern of family and friends generally will provide continuous opportunities for an erroneous commitment to be corrected....

. . . .

"Having concluded that the preponderance standard falls short of meeting the demands of due process and that the reasonable doubt standard is not required, we turn to a middle level of burden of proof that strikes a fair balance between the rights of the individual and the legitimate concerns of the state. We note that 20 states, most by statute, em-

ploy the standard of 'clear and convincing' evidence; ..."

The Supreme Court then concluded that the term "unequivocal" was not constitutionally required determining that the burden of the state would be equal to the "clear and convincing" standard. Upon the entirety of this record, we find and hold that the evidence satisfied the "clear and convincing" test of *Addington v. Texas, supra,* and was sufficient to sustain the trial judge's order. TEX.REV.CIV.STAT. ANN. Art. 5547–2 (Vernon's Supp.1984) spells out, in detail and with clarity, the purposes of the Texas Mental Health Code. *Article 5547–2* beneficially provides, in relevant part:

"It is the purpose of this code to provide access to humane care and treatment for all persons who suffer from severe mental illness by:

"(1) facilitating treatment in an appropriate setting;

"(2) enabling them to obtain needed evaluation, care, treatment, and rehabilitation with the least possible trouble, expense, and embarrassment to themselves and their families;

"(3) eliminating, if so requested, the traumatic effect on the patient's mental health of public trial and criminal-like procedures;

"(4) protecting each person's right to a judicial determination of their need for involuntary treatment;

"(5) defining the criteria which must be met for the state to order. care and treatment on an involuntary basis; ....
....

"(7) safeguarding the legal rights of patients in such a manner as to advance and not impede the therapeutic and protective purposes of involuntary mental health care; ...."

Reviewing the entire record before us, we find that the purposes of *Article 5547–2* have been admirably satisfied. Point of Error 2 is overruled.

AFFIRMED.