In the Interest of G.D.

No. 10–98–365–CV.

Court of Appeals of Texas,
Waco.

Jan. 19, 2000.

Bradley Thomas Newsom, Meridian, for appellant.

B.J. Shepherd, Dist. Atty., Meridian, for appellee.

Before Chief Justice DAVIS, Justice VANCE, and Justice GRAY.

## OPINION

TOM GRAY, Justice.

At trial, a man was found not guilty due to insanity. At a subsequent involuntary commitment proceeding, it was determined that he was mentally ill and that he met the criteria for involuntary commitment. He was ordered confined to a hospital for inpatient treatment. By two issues, he appeals the finding of mental illness. He claims that his rights were violated because the expert appointed for the hearing was not independent and that the jury was

not properly informed of outpatient alternatives. We find that the trial court did not abuse its discretion in appointing the expert. Further, the jury is not authorized to consider alternative types of treatment, thus the trial court did not err by refusing to instruct the jury. We affirm the judgment.

## BACKGROUND

This is an appeal from an involuntary commitment proceeding under the Texas Mental Health Code. TEX. HEALTH & SAFETY CODE ANN. §§ 571.001–.021 (Vernon 1992 & Supp.2000). G.D. was found not guilty by reason of insanity of the offense of aggravated assault of a public servant. Pursuant to the Texas Code of Criminal Procedure and the Texas Health and Safety Code, within 30 days of the criminal trial judgment, a hearing was held to determine G.D.'s mental state. TEX.CODE CRIM. PROC. ANN. art. 46.03 § 4(d)(2) (Vernon Pamp. 2000). The jury found that G.D. was mentally ill at the time of the hearing and that he met the criteria required for involuntary commitment. The trial court rendered judgment on the jury's verdict and ordered him to submit to inpatient treatment at Vernon State Mental Hospital.

## APPEAL

G.D. appeals from the judgment that he is mentally ill. He brings two points of error on appeal. First, he complains that the trial court denied his right to meaningfully participate in a judicial proceeding where his liberty was at stake when his request for an independent psychiatric expert was denied. He claims that this denial violated his right to meaningfully participate because he did not have an independent expert examine him and help his counsel prepare for cross-examination of the State's experts. Second, he claims that the trial court erred by refusing to allow him to inform the jury that outpatient treatment was an option available to them under the law. Because his issues are related, we examine his second issue first.

## OUTPATIENT TREATMENT

■ G.D. complains that the trial court erred by refusing to allow him to inform the jury about outpatient treatment and that the refusal was harmful. Specifically, G.D. argues that the trial court erred by not allowing G.D.'s attorney to inform the venire panel that outpatient treatment was available in his case. He also argues that the court erred by not allowing outpatient treatment evidence at trial and by not allowing the charge to reflect the option of outpatient treatment. G.D. contends that these errors were harmful.

*A "30 day hearing" under Article 46.03*

When a person has been acquitted of criminal charges by reason of insanity, the Code of Criminal Procedure provides for an automatic commitment at a maximum security facility for up to thirty days for purposes of psychiatric evaluation. *See* TEX.CODE CRIM. PROC. ANN. art. 46.03 § 4(d)(1) (Vernon Pamp.2000). The trial court retains jurisdiction over the acquitted person. *Id.*

The trial court must conduct a hearing within 30 days of the acquittal order to determine if the person acquitted by reason of insanity is mentally ill or mentally retarded and meets the criteria for involuntary commitment as provided in the Mental Health Code. *Id.* § 4(d)(2). The Mental Health Code and the Mentally Retarded Person's Act are codified under Title 7 of the Health and Safety Code. TEX. HEALTH & SAFETY CODE ANN. §§ 571—577 & 591—596 (Vernon 1992 & Supp.2000). The Mental Health Code is a civil statute and provides for proceedings for court-ordered mental health services or involuntary commitments. A hearing conducted under article 46.03 of the Code of Criminal Procedure is to be conducted by the trial court in the same manner as a hearing on an application for involuntary commitment under the Mental Health Code. TEX.CODE CRIM. PROC. ANN. art. 46.03, § 4(d)(2) (Vernon Pamp.2000).

The criteria for involuntary commitment as set forth in the Mental Health Code provides that a judge or jury may not order mental health services unless the fact finder finds from clear and convincing evidence that: (1) the proposed patient is mentally ill and (2) as a result of that illness is (A) likely to cause serious harm to himself, (B) likely to cause serious harm to others, or (C) will, if not treated, continue to suffer severe and abnormal mental, emotional, or physical distress, will continue to experience deterioration of his ability to function independently, and is unable to make a rational and informed decision as to whether or not to submit to treatment. TEX. HEALTH & SAFETY CODE ANN. § 574.034(a) (Vernon 1992).[1]

In order to support an involuntary commitment under this section, the jury must find mental illness at the time of the hearing as well as threat of future harm to self, to others or to the individual's mental health. The Mental Health Code specifically provides for the right to a jury to determine these issues if requested. The jury does not determine any course of treatment. At a hearing before a jury, the jury determines if the proposed patient is mentally ill and meets the criteria for court-ordered mental health services. *Id.* § 574.032(f).

Once these determinations have been made, the jury is dismissed. The statute prohibits the jury's consideration of alternative forms of treatment or services. The statute provides that the jury "... may not make a finding about the type of services to be provided to the proposed patient." *Id.* After the jury is dismissed, the judge may hear additional evidence relating to alternative settings for care before entering an order. *Id.* § 574.036(a) & (b); *see also* § 574.036(c)(d)(e)(1) & (2) (Vernon Supp.2000) (a judge may enter an order committing the person to outpatient mental health services if the trier of fact makes a mental illness finding under Section 574.034(b) or 574.035(b)).

G.D. directs us to article 46.03 § 4(d)(3) and (4), which provides for the disposition of the hearing. TEX.CODE CRIM. PROC. ANN. art. 46.03 § 4(d)(3) & (4) (Vernon Pamp. 2000). The Code of Criminal Procedure allows the trial court to order outpatient supervision upon a threshold showing that the evaluation of the patient prior to the hearing shows a report of the proposed patient's mental condition which includes a recommendation that treatment or care be provided on an out-patient basis. While G.D. has not briefed this issue, an examination of the two physicians certificates of medical examination for mental illness made prior to the hearing but within the time frame allowed under statute do not include such a recommendation. Both certificates recommend inpatient treatment. In any event, the decision regarding the type of treatment must be made by the trial court. The jury is not permitted to make such a determination.

The trial court's rulings during voir dire, the trial and the charge, which prohibited the presentation of treatment alternatives to the jury, were not error.

Appellant's second issue is overruled.

---

1. This appeal comes under the prior code. Under the current statute,(a) the judge may order a proposed patient to receive court-ordered temporary impatient mental health services only if the judge or jury finds, from clear and convincing evidence, that: (1) the proposed patient is mentally ill; and (2) as a result of that mental illness the proposed patient: (A) is likely to cause serious harm to himself; (B) is likely to cause serious harm to others; or (C) is: (i) suffering severe and abnormal mental, emotional, or physical distress; (ii) experiencing substantial mental or physical deterioration of the proposed patient's ability to function independently, which is exhibited by the proposed patient's inability, except for reasons of indigence; to provide for the patient's basic needs, including food, clothing, health, or safety; and (iii) unable to make a rational and informed decision as to whether or not to submit to treatment. TEX. HEALTH & SAFETY CODE ANN. § 574.034(a) (Vernon Supp.2000).

## COURT APPOINTMENT OF AN EXPERT

■ G.D. contends that the trial court denied him due process by failing to provide for an independent psychiatric expert to examine him and help him prepare for cross-examination of the State's experts. G.D. points this court to holdings in *Ake v. Oklahoma*, 470 U.S. 68, 83, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985), as well as to *De Freece v. State*, 848 S.W.2d 150, 159 (Tex.Crim.App.1993), for the proposition that an indigent defendant is entitled to an expert in order to present his defense. *Ake* and *De Freece* both address issues of appointment of experts in the criminal context. Neither G.D. nor the State points to any civil cases that apply the constitutional standard of *Ake* and *De Freece* to the "30 day hearing." We searched for any such cases and found none.

In order to have an expert appointed under the *Ake* and *De Freece* line of cases, the defendant must make a proper showing of the need for the expert and that the issue about which the expert is needed will be a significant factor in the criminal trial. The purpose of the appointment is to level the playing field; to give a defendant access to a competent expert who can assist in the evaluation, preparation, and presentation of the defense. *Griffith v. State*, 983 S.W.2d 282, 286 (Tex.Crim.App.1998). This does not mean that a defendant has the right to choose an expert of his personal liking. *Cantu v. State*, 939 S.W.2d 627, 638–639 (Tex.Crim.App.1997).

*Ake* and *De Freece* each dealt with pre-verdict mental health issues where an independent psychiatric expert was not appointed at the guilt/innocence phase of the underlying criminal trial. G.D. has already been found not guilty by reason of insanity at the criminal trial. The issue of whether an expert must be appointed to assist the defense of an indigent person at a temporary involuntary mental health commitment hearing has not been decided by the courts. G.D. asks us to extend the *Ake* and *De Freece* holdings to a post-verdict hearing for temporary involuntary commitment. The applicability of *Ake* and *De Freece* and their progeny in this situation is not before us because the record reflects that the court appointed an expert, though not an expert personally chosen by G.D.

### The Nature of the Hearing

■ A mental health commitment proceeding is not treated as a criminal case. Thus, all the procedural requirements of a criminal hearing are not strictly applicable. *N.W. v. State*, 678 S.W.2d 158, 160 (Tex.App.—Beaumont 1984, no writ) (citing *Jones v. State*, 610 S.W.2d 535 (Tex.App.—Houston [1st Dist.] 1980, writ ref'd n.r.e.)); *See Addington v. Texas*, 441 U.S. 418, 99 S.Ct. 1804, 1809, 60 L.Ed.2d 323 (1979). Further, the procedure for making the determination of mental illness comes under the purview of the civil statutes. Involuntary mental health commitment proceedings are civil rather than criminal in nature. *In Best Interest of G.B.R.*, 953 S.W.2d 391, 395 (Tex.App.—El Paso 1997, no writ); *Taylor v. State*, 671 S.W.2d 535, 539 (Tex.App.—Houston [1st Dist.] 1983, no writ). Such a proceeding is a civil matter, notwithstanding the underlying criminal prosecution. *In Best Interest of G.B.R.*, 953 S.W.2d at 395.

### Standard of Review

G.D. was afforded an expert to assist him at the "30 day hearing." His complaint is that the appointed expert had also served as the courts neutral expert at the guilt innocence phase of trial. As previously stated, the issue of whether an appointment of an expert to assist an indigent person who is the subject of an involuntary commitment hearing is required is not properly before us because the trial court appointed an expert. The issue before us is a complaint about the appointment of a specific expert. We will review the trial courts selection of an expert for an abuse of discretion. *See De Freece*, 848 S.W.2d at 161,n3 (citing *Stoker v. State*, 788 S.W.2d 1, 16–17 (Tex.Crim.App.

1989)); *Hammett v. State*, 578 S.W.2d 699, 705–707 (Tex.Crim.App.1979).

Abuse of discretion implies more than an error in judgment; it must amount to an arbitrary and unreasonable action by the trial court. A court abuses its discretion if it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law. *Walker v. Packer*, 827 S.W.2d 833, 839–40 (Tex.1992) (orig.proceeding). G.D. must establish that the trial court's decision was so arbitrary and unreasonable as to amount to a clear and prejudicial error of law. *See id.* at 840. Even if the reviewing court would have decided the issue differently, it cannot disturb the trial court's decision unless it is shown to be arbitrary and unreasonable. *Id.*

### Appointment of an Expert

In this case, a pre-hearing motion was held before the court on November 20, 1998 concerning G.D.'s motion for appointment of an independent expert.[2] The trial court utilized a procedure comparable to the criminal provision and held an *ex parte* hearing under *Williams v. State*, 958 S.W.2d 186 (Tex.Crim.App.1997), in order to determine whether an expert should be appointed. The judge agreed to appoint an expert and then appointed Dr. Steven L. Mark. The judge noted that Dr. Mark had previously testified as a court appointed neutral expert at the underlying criminal trial where G.D. was found not guilty by reason of insanity. At the underlying criminal trial, Dr. Mark served to assist the court separate from any expert put forth by the State or the defense in their respective cases-in-chief. The judge also pointed out that Dr. Mark had previously testified in a manner consistent with G.D.'s criminal trial strategy, and that he would

be permitted to meet with G.D. before the involuntary commitment hearing.

■ Courts have held that in the criminal context, a court's neutral expert does not necessarily fulfill the role of a "psychiatric assistant to the indigent accused envisioned by *Ake*." *De Freece*, 848 S.W.2d at 159. However, because an expert served as a "court's expert" during the guilt/innocence phase of the criminal trial does not mean *per se* that such an expert cannot serve as an independent expert during the later involuntary commitment proceeding. The expert appointed did in fact assist G.D. stating that outpatient treatment was a possibility in his opinion.[3] More importantly, the record shows that he was available to counsel during preparation for the hearing, that counsel met with him several times, and that he was appointed such that he represented G.D., not the state. Additionally, because he was not called by the state, there was no risk that he would involuntarily waive attorney-client or work product privileges.

At the hearing, Dr. Mark testified favorably for G.D. stating that he "hardly seemed like the same person ... was not psychotic, not threatening, not bizarre or inappropriate, seemed well controlled on his medication and functioning a lot better, with his thinking, with his actions." Dr. Mark was also able to affirmatively state that G.D. appeared able to function in the real world and would not be a danger to himself or others so long as he continued taking his medications.

Without specifically finding that due process requires appointment of an expert at a mental health hearing, we find that the trial court's appointment of the expert who had previously served as the court's neutral expert in the criminal proceeding to be an independent expert in order to

---

**2.** The motion is titled "Motion for Hearing to Determine Competency of the Defendant to Stand Trial," however, the substance of the argument on record indicates that counsel was moving the court to appoint an independent expert.

**3.** Some of this testimony was received outside the presence of the jury. The judge, rather than the jury, ultimately decides the treatment after a jury determines the current mental state of the person. The trial judge thus heard the testimony urged by G.D.

assist the defense in the involuntary commitment hearing was not so arbitrary and unreasonable as to amount to a clear and prejudicial error of law. The trial court did not abuse its discretion in appointing Dr. Mark, even though the appointment may not have been one that G.D. would have personally chosen.

Appellant's first point of error is overruled.

**CONCLUSION**

Having overruled both of G.D.'s issues, we affirm the judgment.