In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-09-00114-CV


____________________



ANDREW SAWYER WELLER, Appellant



V.



THE STATE OF TEXAS, Appellee






On Appeal from the Criminal District Court


Jefferson County, Texas


Trial Cause Nos. 49280, 49361






MEMORANDUM OPINION


 This is an appeal from a commitment order. In one issue, Andrew Sawyer Weller
asserts that "[t]he trial court erred in entering an order renewing court ordered inpatient
extended mental health services because the order is factually insufficient." We affirm the
trial court's order.

 Weller was found not guilty of murder by reason of insanity on January 11, 1988. See
Weller v. State, 184 S.W.3d 787, 788 (Tex. App.--Beaumont 2006, no pet.). Weller was
committed for treatment pursuant to article 46.06, section 4(d) of the Texas Code of Criminal
Procedure. Id.; see also Act of May 25, 1983, 68th Leg., R.S., ch. 454, § 3, 1983 Tex. Gen.
Laws 2640, 2643-47 (repealed 2005) (current version at Tex. Code Crim. Proc. Ann. art.
46C.256 (Vernon 2006)). (1) Weller is currently committed to Rusk State Hospital. 

 The State filed an application for renewal of extended court-ordered mental health
services. Section 4(d)(5) of article 46.03 provides that a person acquitted by reason of
insanity and committed to a mental hospital or other appropriate facility may only be
discharged by an order of the committing court, and charges the trial court with determining
whether the acquitted person continues to meet the criteria for involuntary commitment. Act
of May 25, 1983, 68th Leg., R.S., ch. 454, § 3, 1983 Tex. Gen. Laws 2640, 2644-45
(repealed 2005); see also Tex. Health & Safety Code Ann. §§ 574.031-.037 (Vernon 2003
& Supp. 2008). "'The court can only recommit appellant if it finds that he meets one of the
criteria for commitment specified in Mental Health Code section 574.035.'" Weller v. State,
273 S.W.3d 350, 353 (Tex. App.--Beaumont 2008, no pet.) (quoting Campbell v. State, 118
S.W.3d 788, 793 (Tex. App.--Houston [14th Dist.] 2003, pet. denied)). 

 After Weller waived his right to a jury trial, the trial court held a hearing on the
application. The court found by clear and convincing evidence, that Weller (1) is mentally
ill; (2) will, if not treated, continue to suffer severe abnormal mental, emotional and physical
distress; (3) will, if not treated, continue to experience deterioration of his ability to function
independently; (4) is presently unable to make a rational and informed decision as to whether
or not to submit to treatment; (5) his present condition is expected to continue for more than
90 days; and (6) his current treatment for his psychosis, which is monitored to detect signs
of Leukopenia (low white blood cell count), must be reviewed by proper health authorities
due to a recent blood analysis reflecting a critically low result. The court entered a judgment
committing Weller to Rusk State Hospital for inpatient treatment. 

 Appellant asserts on appeal that the trial court's order is "factually insufficient"
because the trial court "made oral findings in open court," which appellant asserts "do not
comport with the required statutory findings." Appellant further contends that the findings
in the court's written order conflict with the court's oral findings and that the court's oral
pronouncement controls. Appellant argues that the trial court's order should be modified 
to conform with the court's oral findings and that once the order is modified the court will
be "left with the inescapable conclusion that the state has wholly failed to meet its burden,
and the trial court erred in entering its order." In support of this argument, appellant relies
on comments made by the trial court during the hearing including an exchange that took
place between Weller and the trial judge. 

 During the competency hearing, the State called two expert witnesses, Dr. Dan
Roberts, a clinical psychologist, and Dr. Edward Gripon, a psychiatrist. To arrive at his
opinion, Dr. Roberts interviewed Weller and reviewed Weller's records. Dr. Roberts
testified that it is his opinion that Weller is mentally ill and his mental illness is severe and
persistent. Dr. Roberts testified about Weller's refusal to take antipsychotic medication in
the past. Dr. Roberts further testified that he observed signs that Weller's thought process
remained disturbed and somewhat ineffective and his judgment and reasoning skills appear
to be impaired. Dr. Roberts stated that he saw ongoing signs of paranoia in Weller. In Dr.
Roberts's opinion, Weller's signs of ongoing mental illness were significant enough to render
him unstable. Dr. Roberts stated that without continuing treatment in an inpatient facility
Weller would be a danger to himself and others and that Weller would continue to suffer
severe and abnormal mental, emotional or physical distress. Dr. Roberts explained that in
the "past year" Weller had "tried to cover his symptoms" and stated that he was not psychotic
"in spite of the fact that he clearly has been for many years." Without treatment in an
inpatient facility, Dr. Roberts believed that Weller would continue to experience deterioration
of the ability to function independently. 

 Dr. Gripon, who testified that he has been involved in Weller's case since the mid-1980s, reviewed Weller's hospital records prior to testifying at the hearing. Weller, however,
refused to meet with Dr. Gripon. Like Dr. Roberts, Dr. Gripon testified that Weller's mental
illness was severe and persistent and that if not treated Weller would continue to suffer
severe abnormal mental, emotional or physical distress. Dr. Gripon further testified, based
on his evaluation, that if not treated Weller would continue to experience deterioration of the
ability to function independently. In Dr. Gripon's opinion, Weller did not have the ability
to participate in outpatient treatment services effectively and voluntarily. Following Dr.
Gripon's testimony, the state rested. 

 Weller called Dr. Satyajeet Lahiri, a psychiatrist at Rusk State Hospital to testify. Dr.
Lahiri was part of the treatment team that prepared the Rusk State Hospital's report,
submitted to the court, regarding whether Weller needed continued hospitalization or was
ready for discharge into the community. Dr. Lahiri explained that Weller was free to walk
within the grounds of the facility without an escort and was considered reliable and
independent. According to Dr. Lahiri, "very few" patients have the least restrictive ground
access that Weller has at Rusk Hospital. Dr. Lahiri explained that Weller was part of the
work program and was considered psychiatrically stable, meaning he was not showing "acute
signs of psychosis" and was "free of assaultive or self-injuries tendencies." Dr. Lahiri
testified that Weller had received only positive reports regarding his job performance. 

 It was the opinion of Dr. Lahiri and the treatment team that as of February 14, 2008,
Weller did not in any way appear to be symptomatic of his mental illness. According to Dr.
Lahiri, Weller's "symptoms were well-controlled by the medication." Dr. Lahiri testified that
when Weller was initially admitted he had problems with his medication; however, once
Weller's medication was changed, Weller was comfortable with that medication and the
medication was "effective as it controlled his symptoms very well." Dr. Lahiri explained,
"Mr. Weller had psychotic symptoms related to his being paranoid and also he's expressing
delusional thinking. So these symptoms were very well targeted by his taking [his current
medication] because he did not show any acute psychotic symptoms; and this is why I
mentioned that [his current medication] was effective." Dr. Lahiri acknowledged that Weller
would have to take the medication, "or some other medication as regulated by a doctor" for
a long period of time. Dr. Lahiri explained that he and the other two members of the
treatment team were recommending to the court that Weller be discharged from inpatient
care. Following Dr. Lahiri's testimony, appellant rested. 

 After both parties rested but before the court made its ruling, the court informed the
parties that it had received a note from Dr. Gripon stating, "[c]all Dr. Gripon. Very
important regarding Weller." Over appellant's objection, the court allowed Dr. Gripon to be
recalled and further examined. Dr. Gripon testified that he had received a call from the
Jefferson County Correctional Facility after he had testified, informing Dr. Gripon that
Weller's lab work indicated that Weller had developed a side effect from the drug he had
been prescribed and which was being administered to him, which he had been taking for
seven months. According to Dr. Gripon, Weller had developed Leukopenia, a dangerously
low white blood cell count. Dr. Gripon stated that Weller would have to be taken off his
current medication and that the treating physicians would "have to go back to square one"
in regulating Weller's medication. 

 The hearing was continued until March 4, 2009, to give Weller's counsel an
opportunity to review the lab results and contact any additional witnesses he may need to call
in response. On March 4, 2009, the information regarding Weller's blood analysis was
admitted into evidence over objection by Weller's counsel. At that time the court made the
following comments on the record:

 All right. Well, its going to be admitted; and notwithstanding Mr. Johnson's
statements, what I believe we have here is something that we're all concerned
about, the well-being of Mr. Weller. No one, I don't think, here wants to see
Mr. Weller in any other condition but better and good and safe and healthy and
if all of that results in him being released to outpatient treatment, then so be it. 
But what has been dropped before this Court is a grenade with its pin pulled
out, in essence. A lab test which the evidence presented by the defendant has
been showing in this area to be normal is now not only abnormal but is being
represented in a critical - a critically disturbing state. And the way I review
this from what I know about what I am seeing, Mr. Weller is in dire physical
health because of this and I don't think we are in a position to do anything else,
in all fairness to him and his safety and health, but to get the people who are
best able to treat him and get him back to a normalcy and that is to refer him
back to the Texas Department of State Health Services so they can either
determine whether this is an aberration or whether his treatment needs to be
adjusted to a treatment schedule and a treatment method that is safe for him. 


Thereafter, Weller requested that he be allowed to address the court, at which time a brief
exchange took place between Weller and the court. Weller expressed to the court his desire
to work with the mental health authority on an outpatient basis to find an alternative
treatment for his mental illness. Thereafter, the following discussion ensued:

 THE COURT: [T]he court is not going to allow that request until we
have the doctors who say this medicine is what's good for you, it's working 
and you're not having any adverse consequences and -- 


 THE DEFENDANT: You have that.

 THE COURT: Until that last moment, that's the way it was headed but
right now without [the current medication], that means you would not be
getting any treatment for your psychosis and in that situation, the Court is not
doing its proper work and is not --


 THE DEFENDANT: Well, through safe administration from the
mental health authority's treatment team there at Spindletop. I haven't even
sat with the psychiatrist there, and I'm sure he's very concerned about this
also.


 THE COURT: Yes, sir. I understand. I can appreciate what you're
saying. The Court is going to administer and formulate an order that would
require Mr. Weller to go back to the Texas Department of State Health
Services, let them analyze this and get back to me at the earliest possible time
and if they at any time in the near future decide that we can take him back up
and pick up where this hearing left off or, you know, have another hearing
based upon the new facts concerning the new treatment, the Court will be
ready, willing and able to do that. But, otherwise, we're going to have to get
Mr. Weller back for the treatment that this Court can be satisfied and feel
comfortable with.



 . . . .


 THE DEFENDANT: But how can you throw out a full year of doing
exactly that?


 THE COURT: Because this test now has shown -- it's a different set
of circumstances. It has been fine for a year. Now this test shows, as you
know, that this medicine is adverse and the doctors --


 THE DEFENDANT: That's right. I've been off of it and my blood is
creating new blood cells and all that and its correcting itself.


 THE COURT: Well, I'm a doctor of jurisprudence; and I don't know
if you're a medical physician. I don't think you have any experience.


 THE DEFENDANT: No, but that's what the blood people are telling me.


 THE COURT: But we want the experts to render a decision but the
experts, a doctor, has looked at these results and this result shows a critical,
critical response. It says "critical" on it; and to me, that means you need to get
taken care of. 


 Appellant asserts that these remarks, made by the trial court on the record, constitute
oral findings that conflict with the written findings set forth in the court's judgment.
Appellant further contends that the judgment must be modified to conform to the court's oral
pronouncement of its findings, which are insufficient to support the judgment. Appellant
cites Coffey v. State, 979 S.W.2d 326 (Tex. Crim. App. 1998) in support of his argument. 
In Coffey, the court held that when the court's oral pronouncement of the defendant's
sentence and its written memorialization of the sentence vary, the oral pronouncement
controls. Id. at 328; see also Taylor v. State, 131 S.W.3d 497, 500 (Tex. Crim. App. 2004);
Thompson v. State, 108 S.W.3d 287, 290 (Tex. Crim. App. 2003). In most criminal cases,
a defendant's sentence must be pronounced orally in his presence. See Tex. Code Crim.
Proc. Ann. art. 42.03, § 1(a) (Vernon Supp. 2008); see also Taylor, 131 S.W.3d at 500. The
judgment serves as a written declaration of the court's oral pronouncement of the defendant's
sentence. Taylor, 131 S.W.3d at 500. In Texas, mental health commitment proceedings are
civil rather than criminal proceedings. See In the interest of G.D., 10 S.W.3d 419, 422 (Tex.
App.--Waco 2000, no pet.); see also N.W. v. State, 678 S.W.2d 158, 160 (Tex. App.--Beaumont 1984, no writ); Taylor v. State, 671 S.W.2d 535, 539 (Tex. App.--Houston [1st
Dist.] 1983, no writ). We find Coffey, and the line of criminal cases which follow its rule,
inapplicable to the present case. 

 Generally, in civil proceedings, a court's statements during a hearing do not constitute
findings. See Int'l Ass'n of Fire Fighters Local 624 v. City of San Antonio, No. 04-06-00506-CV, 2007 WL 4124306, at *3 (Tex. App.--San Antonio Nov. 21, 2007, no pet.); see
also Intec Sys., Inc. v. Lowrey, 230 S.W.3d 913, 918 (Tex. App.--Dallas 2007, no pet.)
(recognizing that a court's oral statements cannot substitute for findings); Gibson v. Bostick
Roofing & Sheet Metal Co., 148 S.W.3d 482, 494 (Tex. App.--El Paso 2004, no pet.)
(holding that the court's comment on the record was an oral comment and did not constitute
a finding of fact or conclusion of law); Larry F. Smith, Inc. v. The Weber Co., 110 S.W.3d
611, 615 (Tex. App.--Dallas 2003, pet. denied) (recognizing the "long standing rule" that oral
statements cannot substitute for findings of fact and conclusions of law). The Texas Rules
of Civil Procedure require that a party request findings of fact of fact and conclusions of law
and that written findings be filed separately by the court. See Tex. R. Civ. P. 296, 297, 299
& 299a. Here, however, the Texas Health and Safety Code mandates that the court make
findings for extended inpatient mental health services and set forth those findings in the
court's order. See Tex. Health & Safety Code Ann. § 574.035(c) ("[J]udge must specify
which criterion listed in [the statute] forms the basis for the decision."); id. § 574.035(g)
("[C]ourt may not enter an order . . . unless appropriate findings are made and are supported
by [the] testimony . . . ."); see also Johnstone v. State, 22 S.W.3d 408, 409 (Tex. 2000)
(finding that when a rule of procedure conflicts with a statute, the statute prevails unless the
rule was passed subsequent to the statute and repeals the statute). The trial court's comments
on the record do not constitute findings. See generally Int'l Ass'n of Fire Fighters, 2007 WL
4124306, at *3; Tex. Health & Safety Code Ann. § 574.035(c), (g).

 Assuming it was proper for the court to make oral findings regarding its reasons for
extending court-ordered mental health services under the Texas Health and Safety Code, we
disagree with appellant's contention that the court's comments in the present case conflict
with its written findings. The court found in part, that Weller (1) is mentally ill; (2) will, if
not treated, continue to suffer severe abnormal mental, emotional and physical distress; (3)
will, if not treated, continue to experience deterioration of his ability to function
independently; and (4) is presently unable to make a rational and informed decision as to
whether or not to submit to treatment. See Tex. Health & Safety Code Ann. §
574.035(a)(1)(C)(i)-(iii). The court's comments regarding Weller's changed circumstances
support these findings. 

 The trial court could reasonably have found by clear and convincing evidence
submitted on the record that prior to and without taking his current medication, Weller
continued to meet the statutory criteria for involuntary commitment. Dr. Lahiri's favorable
opinions regarding Weller's mental stability at the time of discharge from his care were
clearly based upon the perceived positive effects that the current medication was having on
Weller's mental illness, as long as it was being properly administered and taken by Weller.
Dr. Lahiri further testified that without this medication and before it was prescribed and
taken by Weller, Weller did not exhibit appropriate behaviors to allow Dr. Lahiri to express
his opinion that Weller could be effectively treated on an outpatient basis. The trial court
could reasonably conclude from Dr. Gripon's testimony after receiving the most recent blood
tests from Weller that Weller was going to have to be taken off of the medication that had
allowed Weller to show the improvements in his condition that Dr. Lahiri found favorable. 
Our review of the record indicates that the evidence is legally and factually sufficient to
support the court's judgment. We overrule appellant's sole issue on appeal and affirm the
judgment of the court below.

 AFFIRMED. 

 __________________________________

 CHARLES KREGER

 Justice


Submitted on June 23, 2009

Opinion Delivered August 27, 2009



Before McKeithen, C.J., Kreger and Horton, JJ.
1. The Texas Legislature repealed article 46.03 in 2005 and amended the Code of
Criminal Procedure to add "Chapter 46C. Insanity Defense." Act of May 27, 2005, 79th
Leg., R.S., ch. 831, §§ 1, 2, 2005 Tex. Gen. Laws 2841. The 2005 amendment "applies only
to an offense committed on or after the effective date of this Act. An offense committed
before the effective date of this Act is covered by the law in effect when the offense was
committed, and the former law is continued in effect for that purpose." Act of May 27, 2005,
79th Leg., R.S., ch. 831, § 5, 2005 Tex. Gen. Laws 2841, 2853-54. The effective date was
September 1, 2005. Act of May 27, 2005, 79th Leg., R.S., ch. 831, § 6, 2005 Tex. Gen. Laws
2841, 2854.