In the Missouri Court of Appeals
 Eastern District
 DIVISION THREE

 STATE OF MISSOURI, ) No. ED108941
 )
 Respondent, ) Appeal from the Circuit Court of
 ) Washington County
 vs. )
 ) Honorable Wendy W. Horn
 ERIC G. HOLLOWELL, )
 )
 Appellant. ) Filed: August 17, 2021

 Introduction

 Eric Hollowell (“Appellant”) appeals his convictions of fifteen counts of unlawful

possession of a firearm in violation of Mo. Rev. Stat. § 571.070.1 Appellant was sentenced to

concurrent seven-year sentences on fourteen counts and a four-year sentence for the fifteenth

count to be served consecutively, for eleven years in the Missouri Department of Corrections

(“DOC”).

 Appellant raises four points on appeal. In Point I, Appellant argues the trial court erred

by overruling his motion for acquittal because the State failed to prove he possessed and

controlled the firearms. In Point II, Appellant argues the trial court abused its discretion by

admitting inadmissible hearsay testimony to establish Appellant’s control over the firearms. In

Point III, Appellant argues the trial court erred and violated his Sixth Amendment confrontation

1
 All statutory references are to Mo. Rev. Stat. (2018), unless otherwise indicated.
right by permitting a police officer to testify about Appellant’s wife’s testimonial hearsay

statement, establishing Appellant’s control over the firearms. In Point IV, Appellant argues his

right to be free of double jeopardy was violated because the unit of prosecution permitted by

section 571.070 is ambiguous.

 Points I and II are dispositive. We reverse and need not consider Points III and IV.

 Factual and Procedural Background

 1. Investigation and Arrest

 On December 19, 2018, Appellant was arrested in Irondale, Missouri after his wife

Beckey reported him to police for domestic violence against her.2 After Appellant’s arrest,

Beckey informed police Appellant had a prior felony conviction and kept numerous firearms in

their home, in violation of Missouri’s felon-in-possession of a firearm statute, section 571.070.

Section 571.070 provides:

 1. A person commits the offense of unlawful possession of a firearm if such

 person knowingly has any firearm in his or her possession and: (1) such

 person has been convicted of a felony under the laws of this state, or of a

 crime under the laws of any state or of the United States, which if committed

 within this state would be a felony . . . .

 2. Unlawful possession of a firearm is a class D felony . . . .

 3. The provisions of subdivision (1) of subsection 1 of this section shall not

 apply to the possession of an antique firearm.

 Beckey gave Detective Ethan Haworth and members of the Washington County Sheriff’s

Department consent to search the lower level of their home, where Appellant, Beckey, and three

2
 The domestic violence allegations against Appellant are not in issue in this appeal.

 2
grandchildren lived.3 Beckey showed them a locked safe, which she unlocked using a key in her

possession. The safe contained fifteen firearms and ammunition, which the officers seized.

Appellant was not present during the search because he was already in custody.

 On December 21, 2018, Beckey contacted the Sheriff’s Department again and informed

them Appellant had two antique, black powder firearms in the house. The antique firearms were

not discovered during the first search because they were in a closet, not in the safe with the other

firearms. Detective Haworth returned to the home and seized the antique firearms.

 2. The Trial

 a. The State’s Case

 The State charged Appellant with fifteen counts of unlawful possession of a firearm for

the fifteen guns in the safe. Appellant was not charged with possession of the antique firearms.

The State expected to call three witnesses at trial: Beckey, Detective Haworth, and Corrections

Officer Cody Bennett.

 During opening statements, the State told the jury Beckey would testify Appellant had

keys to the gun safe, owned the guns in the safe, and frequently used the guns. The State also

said Beckey would testify she periodically purchased guns on Appellant’s behalf. Beckey did

not testify at trial, purportedly because she had a medical emergency requiring hospitalization.4

 Officer Bennett was a corrections officer at the facility where Appellant was held after

his arrest. Officer Bennett testified Appellant “said he was being charged with the [antique]

handgun that he had, but not the guns in the safe.” The State argued Appellant’s statement to

3
 Two additional family members lived in the upper floor of the home.
4
 The record is unclear whether Beckey ever intended to testify. She never appeared for depositions despite
Appellant’s subpoenas. Further, on-record conversations between the State, Appellant, and the trial court indicate
there was some expectation she would not cooperate.

 3
Officer Bennett established Appellant knew of the guns in the safe and considered them his

property.

 Detective Haworth testified about the Sheriff’s Department’s search of the home and

seizure of firearms and ammunition. Over Appellant’s objection, Detective Haworth testified

Beckey told him Appellant “had several firearms at their home, and so that’s what prompted

[Detective Haworth] to go [to Appellant’s home].” Appellant argued Detective Haworth’s

recitation of Beckey’s out-of-court statements constituted inadmissible hearsay because they

involved an element of section 571.070: Appellant’s possession and control of the firearms in the

safe. The State argued Detective Haworth’s statement was admissible for the non-hearsay

purpose of explaining subsequent police conduct, the search of Appellant’s home. The trial court

permitted Detective Haworth to make the statement for purposes of explaining his subsequent

conduct, based on the State’s representation Beckey would testify to the same facts on direct

examination.5

 On cross-examination, Appellant’s trial counsel asked Detective Haworth, “You

ultimately went to Beckey Hollowell's residence because she's the one who provided you with

information that there were firearms, correct?” Detective Haworth replied, “Yes.” During

argument on Appellant’s motion for acquittal at the close of the State’s evidence, the State

argued trial counsel’s question introduced Beckey’s statement Appellant possessed the guns in

the safe into evidence without limitation, waiving Appellant’s earlier objection. The trial court

agreed and denied Appellant’s motion for acquittal.

5
 Before permitting Detective Haworth to testify about Beckey’s statements, the trial court stated, “Once again, I'm
going to assume that she's going to be here to testify as to these facts, but at the same time -- I'm making an
assumption that may or may not be correct, but I'm assuming that.” Following Appellant’s conviction, the trial court
stated it would have restricted Beckey’s statement further had the court known Beckey was not going to testify.

 4
 The State used Beckey’s claim Appellant possessed the guns for its truth in closing

argument. The prosecutor argued to the jury:

 Now, you also heard that Beckey Hollowell, his wife, told Detective Haworth that

 the guns belonged to Eric. That was her statement, that the guns belonged to Eric,

 not to her. So could that – could Eric exercise control over the guns? Absolutely.

 If he had the keys with him, obviously. If Beckey had the keys, he could just go

 get the keys from her; they're married.

 b. The Defense Case

 Part of Appellant’s defense strategy was establishing he lacked control over the safe by

offering evidence the safe contained guns other people owned. Appellant noted the safe

contained an AR-15 rifle Beckey purchased in her own name, two guns engraved with the names

and initials of other members of the household, and a defective Derringer Model 10 handgun

belonging to an acquaintance of Beckey and Appellant, James Rayman.

 Rayman testified he knew Beckey and Appellant because he worked at the Elks Lodge

where they played bingo. Rayman testified he told Beckey and Appellant he was having

problems with his gun and Beckey said she knew a person who could fix it. Rayman testified he

handed the gun to Beckey and she put it in her purse. Rayman admitted he never saw Appellant

hold the gun and he did not know what Beckey did with it after she left.

 Appellant was convicted on all counts and sentenced to eleven years in the DOC. This

appeal follows. Additional factual and procedural history will be provided below as necessary to

address Appellant’s claims.

 5
 Standard of Review

 Point I: Sufficiency of the Evidence

 Our review of sufficiency of the evidence claims is limited to whether there is sufficient

evidence from which a reasonable trier of fact might have found the defendant guilty beyond a

reasonable doubt. State v. Whalen, 49 S.W.3d 181, 184 (Mo. banc 2001). We accept as true all

evidence favorable to the verdict and inferences from the evidence, disregarding all contrary

evidence and inferences. Id. We will not supply missing evidence or give the State the benefit

of unreasonable, speculative, or forced inferences. Id.

 Point II: Abuse of Discretion

 We review the trial court’s admission of evidence for abuse of discretion. State v.

Anderson, 76 S.W.3d 275, 276 (Mo. banc 2002). Abuse of discretion occurs when the court’s

ruling is clearly against the logic of the circumstances or when it is arbitrary and unreasonable.

State v. Boyd, 143 S.W.3d 36, 40 (Mo. App. W.D. 2004). Reversal is required when there is a

reasonable probability the error affected the trial’s outcome. Id.

 Discussion

 Point II: Detective Haworth’s Hearsay Testimony

 We discuss Point II first because it requires reversal and is dispositive of Point I. On

direct examination, Detective Haworth testified he went to Appellant and Beckey’s house

because Beckey told him Appellant had guns. Appellant’s trial counsel objected, arguing

Beckey’s out-of-court statement was inadmissible hearsay because it reached an issue to be

decided by the fact finder – whether Appellant possessed the guns – and went beyond what was

necessary to explain subsequent police conduct. Trial counsel offered to stipulate Detective

Haworth went to the house because he knew there were guns inside. The trial court permitted

 6
Detective Haworth to repeat Beckey’s claim Appellant had guns in the house, “assum[ing]

[Beckey]’s going to be here to testify as to these facts.” The court instructed the jury the

statement could be used only for the non-hearsay purpose of explaining Detective Haworth’s

subsequent search of Appellant’s house.

 On cross-examination, Appellant’s trial counsel asked Detective Haworth, “You

ultimately went to Beckey Hollowell's residence because she's the one who provided you with

information that there were firearms, correct?” Detective Haworth responded, “Yes.” Detective

Haworth admitted he relied solely on Beckey’s statements about the guns, did not know how

many people lived in the house, and did not investigate whether any other residents owned the

guns.

 A. Appellant’s Objection was not Waived

 Before deciding whether Detective Haworth’s testimony should have been excluded, we

must determine whether Appellant waived his objection by cross-examining Detective Haworth

about the objected-to testimony. The State argues Appellant’s objection was waived because

trial counsel repeated Beckey’s statement on cross-examination without objection. The State

relies on State v. Placke for the proposition objected-to testimony is not prejudicial when the

defendant elicits the same testimony “from its own witnesses.” 290 S.W.3d 145, 154 (Mo. App.

S.D. 2009); see also State v. Holmes, 978 S.W.2d 440 (Mo. App. E.D. 1998) (objected-to

testimony was not prejudicial when the defendant testified about the same objected-to matters in

his own defense).

 Appellant argues Placke and Holmes are distinguishable because trial counsel elicited

Detective Haworth’s testimony on cross-examination as part of a strategy to discredit Beckey’s

out-of-court claims, not as part of the defense case-in-chief. Appellant argues further trial

 7
counsel “did everything she could to keep out this statement.” We agree Placke and Holmes are

distinguishable. These facts are governed by a separate line of cases.

 The Missouri Supreme Court has stated, “it would indeed be a strange doctrine, and a

rule utterly destructive of the right and all benefits of cross-examination, to hold a litigant to

have waived his objection to improper testimony because, by further inquiry, he sought on cross-

examination to break the force or demonstrate the untruthfulness of the evidence given in chief.”

Levin v. Hilliard, 266 S.W.2d 573, 577 (Mo. 1954). Three years after Levin, the Missouri

Supreme Court explained cross-examination about objected-to testimony “would neither waive

nor cure the error in the admission of that evidence.” Chester v. Shockley, 304 S.W.2d 831, 835

(Mo. 1957). This Court has consistently applied the rule in more recent cases, noting “when a

party objects to the admission of evidence and then cross-examines a witness about the matter,

the objecting party has not waived the error in admitting the evidence.” Trident Group, LLC v.

Mississippi Valley Roofing, Inc., 279 S.W.3d 192, 199 (Mo. App. E.D. 2009) (citing Jackson By

and Through Jackson v. Jackson, 875 S.W.2d 590, 592 (Mo. App. E.D. 1994)). See also

MCCORMICK ON EVIDENCE § 55 (Robert P. Mosteller, ed., 2020) (objections are not waived by

cross-examining a witness about the objected-to matter, even if the cross-examiner repeats the

fact or meets the testimony with other evidence which, under the theory of the objection, would

be inadmissible).

 Appellant’s cross-examination of Detective Haworth did not waive his earlier objection.

Like Levin, Chester, Jackson, and Trident Group, Appellant’s trial counsel cross-examined the

State’s witness about testimony she first objected to on direct examination. Unlike Placke and

Holmes, where the defendants introduced the same objected-to testimony through their cases-in-

 8
chief, Appellant never elicited the same testimony “from [his] own witnesses.” Placke, 290

S.W.3d at 154. The objection was therefore preserved.

 B. Beckey’s Hearsay Statement was Inadmissible and Prejudicial

 Appellant argues Detective Haworth’s recitation of Beckey’s statement was inadmissible

hearsay and prejudicial because it went beyond the level of detail necessary to explain

subsequent police conduct and reached the ultimate fact issue of Appellant’s control over the

guns. Hearsay is any out-of-court statement offered to prove the truth of the matter asserted, and

such statements are generally inadmissible unless they fit within certain hearsay exceptions.

State v. Young, 582 S.W.3d 84, 93 (Mo. App. E.D. 2019).

 Appellant relies on State v. Douglas for the proposition “when out-of-court statements go

beyond what is necessary to explain subsequent police conduct, they are hearsay.” 131 S.W.3d

818, 824 (Mo. App. W.D. 2004). In Douglas, police officers were dispatched to investigate a

parked vehicle reportedly involved in a DUI offense. Id. At trial, the officers testified, “there

was a dispatch for a party slumped over the wheel . . .” and “a party was behind the wheel of a

dark-colored SUV . . . .” Id. Defense counsel objected to both statements, arguing the officers’

testimony about the dispatcher’s characterization of the defendant as “slumped” and “behind the

wheel” was inadmissible hearsay and prejudicial because it was unnecessary to explain their

subsequent investigation of the car and went to the ultimate fact issue: whether the defendant

was guilty of DUI. Id. at 824-25. The Court of Appeals for the Western District agreed and

reversed the defendant’s conviction, holding there was a reasonable probability he was

prejudiced by the officers’ statements. Id. at 826.

 The State fails to confront the principle expressed in Douglas that defendants may be

prejudiced when officer testimony reaches a disputed factual issue while purporting only to

 9
explain subsequent conduct. Id. at 824-25. Instead, the State argues the testimony Detective

Haworth offered was cumulative of other evidence indicating Appellant possessed the guns. We

disagree. As explained in Point I, infra, Detective Haworth’s testimony was not cumulative

because it was the only evidence presented at trial establishing Appellant possessed the guns.

Like the officers in Douglas, Detective Haworth’s testimony went beyond what was necessary to

explain his subsequent conduct and improperly reached the fact issue to be decided by the jury:

whether the guns in the house were under Appellant’s control. The trial court therefore abused

its discretion by permitting the testimony and Appellant was prejudiced because there is a

reasonable probability the jury relied on Beckey’s hearsay statement to conclude Appellant

possessed the guns.6 Boyd, 143 S.W.3d at 40.

 Point II is granted.

 Point I: Sufficiency of the Evidence

 Appellant alleges the State failed to prove each element of section 571.070 beyond a

reasonable doubt. Section 571.070 required the State to prove (1) Appellant was previously

convicted of a felony and (2) Appellant knowingly possessed firearms not exempted from the

statute as antiques. It is undisputed Appellant was previously convicted of a qualifying felony

and owned antique firearms not subject to section 571.070. The issue is whether the State

proved Appellant knowingly possessed the fifteen modern firearms found in the locked gun safe.

 To establish possession, the State had to prove Appellant had “access to and control

over” the area where the guns were found. State v. Glass, 439 S.W.3d 838, 846 (Mo. App. E.D.

2014). A defendant may have either constructive or actual possession. State v. McCauley, 528

6
 The trial court’s own statements underscore its error. The court repeatedly stated it permitted Detective Haworth
to testify about Beckey’s statements because the court assumed Beckey would testify. The court acknowledged the
State’s case was “barely submissible” and stated it “was extremely unhappy over the fact that Beckey Hollowell did
not show up for the trial.”

 10
S.W.3d 421, 430 (Mo. App. E.D. 2017). Constructive possession occurs when a defendant has

the power and intention to exercise dominion or control over the object either directly or through

another person, without necessarily having the item in their immediate reach or convenient

control. Id.

 When a defendant has shared control of the premises, the State must produce additional

evidence specifically connecting the defendant to the contraband. Id. Our Court has stated

constructive possession may be established through a totality of the circumstances analysis, after

weighing whether a defendant (1) had easy or routine access to contraband, (2) was in close

proximity to it, (3) commingled other property with it, (4) was in close proximity to the

contraband in plain view of law enforcement, (5) made admissions of ownership or possession,

and (6) made false statements or fled from the contraband, indicating consciousness of guilt. Id.

at 430-31; State v. Morgan, 366 S.W.3d 565, 576-77 (Mo. App. E.D. 2012). “Evidence of

suspicious circumstances are insufficient to meet the State’s burden to adduce additional

evidence tying a defendant to possession in a joint possession case.” McCauley, 528 S.W.3d at

431.

 Appellant argues the State failed to establish he constructively possessed the guns in the

safe because the totality of the circumstances did not indicate he had control over them.

Appellant acknowledges the safe was close to his bedroom and he had access to the safe key on

Beckey’s key ring. However, Appellant notes there were six other people living in the house,

none of Appellant’s property – including his antique guns – were commingled with the guns in

the safe, Appellant was never around the guns in plain view of law enforcement, never admitted

to owning the guns, and never indicated consciousness of guilt by fleeing from the guns or

making false statements about them. Morgan, 366 S.W.3d at 576-77.

 11
 Appellant argues further the evidence indicates other members of his household owned

and controlled some of the guns found in the safe. Appellant notes Beckey purchased the AR-15

in her own name, two of the guns were engraved with the names and initials of other residents of

the house, and Beckey’s and Appellant’s acquaintance James Rayman owned one of the guns.

Appellant argues Beckey’s inadmissible hearsay statement was the only evidence presented from

which the jury could infer he possessed the guns. Appellant reasons if Beckey’s declaration was

inadmissible for its truth, the remaining evidence was insufficient to prove the control element of

joint constructive possession.

 The State argues a reasonable factfinder could conclude Appellant jointly and

constructively possessed the guns in the safe. First, the State argues Appellant’s proximity to the

safe and access to Beckey’s property could allow reasonable jurors to infer Appellant had control

over the contents of the safe. Second, the State argues Appellant’s statement to Officer Bennett

at the jail indicated he was not only aware of the guns in the safe, but considered them his

property. Third, the State argues Appellant jointly possessed the gun James Rayman handed to

Beckey at the Elks Lodge. Finally, the State argues Appellant’s cross-examination of Detective

Haworth permitted the jury to use Beckey’s claim the guns belonged to Appellant to explain

subsequent police conduct and for its truth.

 As discussed, this is a joint constructive possession case. The location of the gun safe

was evidence of Appellant’s knowledge and access to the guns and ammunition inside, but does

not provide “additional evidence specifically connecting him” to the guns. McCauley, 528

S.W.3d at 430. “The mere fact that a defendant is present on the premises or is in proximity to

where the contraband was found does not by itself make a submissible case.” Id. (internal

quotations omitted).

 12
 The State’s characterization of Appellant’s statement to Officer Bennett as an admission

of ownership or possession is unpersuasive. Officer Bennett testified, “[Appellant] said he was

being charged with the black rifle handgun that he had, but not the guns in the safe.” At most,

Appellant’s statement indicated he knew of the guns in the safe. Appellant’s statement did not

admit control. See Id. Similarly, the State presented no evidence Appellant controlled James

Rayman’s gun. Rayman’s testimony established only (1) Appellant was present when Rayman

gave Beckey the gun; (2) Beckey put the gun in her purse; and (3) Rayman assumed Appellant

left the bingo event with Beckey. Finally, as explained in Point II, Beckey’s inadmissible

hearsay statement to Detective Haworth was improperly admitted. Her statement was the only

evidence the State presented establishing Appellant’s control over the guns in the safe.

 The State did not prove Appellant had “access to and control over” the area where the

guns were found and present additional evidence specifically connecting him to the guns. Glass,

439 S.W.3d at 846; McCauley, 528 S.W.3d at 430. We agree with Appellant the Morgan factors

do not “specifically connect” Appellant to the guns. Appellant’s proximity to the guns were

outweighed by the facts he did not commingle his other property – including his antique guns –

with the guns in the safe, made no admissions of ownership or possession, and engaged in no

behavior indicating consciousness of guilt. Morgan, 366 S.W.3d at 576-77.

 Point I is granted.

 Appellant is Entitled to a Judgment of Acquittal

 As a final matter, the State argues this Court may reverse and remand for Appellant to

receive a new trial but cannot reverse and order the trial court to enter a judgment of acquittal

under State v. Kinkead, 983 S.W.2d 518, 519 (Mo. banc 1998). We disagree. In Kinkead, the

defendant was pulled over for a traffic violation and arrested after the police database

 13
erroneously stated the defendant’s driver’s license was suspended. Id. The police conducted a

search incident to arrest, during which they discovered the defendant possessed

methamphetamine. Id. The defendant moved to suppress the methamphetamine, arguing his

arrest was not supported by probable cause because his license was not suspended. Id. The trial

court overruled the motion. Id.

 The Missouri Supreme Court reversed the defendant’s conviction because the State did

not establish there was probable cause for the arrest. But the Court remanded for a new trial,

holding “erroneous admission of evidence does not preclude retrial even though when such

evidence is discounted there may be evidentiary insufficiency.” Id. (emphasis added). The

Court stated, “it is impossible to say that the prosecution would be unable to make a submissible

case had the trial court ruled correctly,” reasoning the State was permitted to rely on the trial

court’s suppression ruling in its decision not to introduce additional evidence of probable cause,

such as calling the police dispatcher to testify. Id.

 Here, the State did not rely on the trial court’s erroneous ruling to determine what

evidence to produce. Unlike Kinkead, where evidence could be produced from the arresting

officer or the dispatching officer, the only witness the State could produce to show access and

control over the guns was Beckey. It is therefore possible to say the prosecution would be

unable to make a submissible case had the trial court ruled correctly. Kinkead is distinguishable.

 Conclusion

 The judgment is reversed. We need not address Points III or IV. As reversal is premised

on the insufficiency of the evidence, we do not remand for a new trial. The double-jeopardy

clause of the United States Constitution precludes a second trial after a reversal based solely on

 14
insufficiency of the evidence. State v. Drabek, 551 S.W.3d 550, 561 (Mo. App. E.D. 2018). We

therefore remand and direct the trial court to enter a judgment of acquittal.

 _______________________________
 Philip M. Hess, Presiding Judge

Angela T. Quigless, Judge and
Collen Dolan, Judge concur.

 15